UNITED STATES of America, Plaintiff,

v.

Martin F. SCHWARTZ, Defendant.

UNITED STATES of America, Plaintiff,

v.

John Joseph SENFT, Defendant.

UNITED STATES of America, Plaintiff,

v.

Desmond A. SMITH, Defendant.

UNITED STATES of America, Plaintiff,

v.

Jean Baptiste VANCOL and Michael Monfiston, Defendants.

UNITED STATES of America, Plaintiff,

v.

Arnulfo RODRIGUEZ–SOLIS, Defendant.

Crim. A. Nos. 87–103 MMS, 87–105 MMS, 87–106 MMS, 88–7 MMS and 88–13 MMS.

United States District Court, D. Delaware.

July 8, 1988.

William C. Carpenter, Jr., U.S. Atty., and Richard G. Andrews, Asst. U.S. Atty.; Dept. of Justice, Wilmington, Del.; John R. Bolton, Asst. Atty. Gen., Robert Cynkar, Deputy Asst. Atty. Gen., Douglas Letter, Thomas Millet, John F. De Pue, and Karen Scrivseth, Dept. of Justice, Washington, D.C., of counsel, for plaintiff.

Richard David Levin, of Connolly, Bove, Lodge & Hutz, Wilmington, Del., for defendant Schwartz.

John C. Phillips, Jr., and Kevin J. O'Connell, of Phillips & Snyder, P.A., Wilmington, Del., for defendant Senft.

Andrew G. Ahern, III, Wilmington, Del., for defendant Smith.

Calvin J. Williams, Wilmington, Del., for defendant Vancol.

Jerome M. Capone, Wilmington, Del., for defendant Monfiston.

Donald E. Pease, Wilmington, Del., for defendant Rodriguez–Solis.

John R. Steer, Gen. Counsel, and Donna H. Triptow, Acting Sp. Counsel, U.S. Sen-

tencing Com'n, Paul S. Bator, Andrew L. Frey, Kenneth S. Geller, and Stephen G. Gilles, of Mayer, Brown & Platt, Washington, D.C.; amicus curiae, of counsel.

## OPINION

### MURRAY M. SCHWARTZ, Chief Judge.

Six defendants filed motions contesting the constitutionality of the Sentencing Guidelines ("the Guidelines") issued by the United States Sentencing Commission ("the Commission"). All defendants were indicted for offenses committed after November 1, 1987, the effective date of the Guidelines. All have plead guilty or were found guilty after a jury trial. The Court has deferred the imposition of sentences until a date as soon as practicable after the issuance of this opinion and order on the constitutionality of the Guidelines.

Defendant Martin F. Schwartz was arrested on November 9, 1987 for offenses committed on that date. The Indictment filed December 8, 1987 charged Mr. Schwartz with the following counts: Count I, possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D); Count II, possession of marijuana in violation of 21 U.S.C. § 844; and Count III, carrying a firearm in relation to the possession of marijuana with the intent to distribute in violation of 18 U.S.C. § 924(c)(1). Pursuant to a plea agreement, on February 18, 1988 the defendant plead guilty to Count I of the Indictment, and the government dismissed Counts II and III. The Court accepted the plea. On the date of the plea the defendant filed a motion to declare the Sentencing Guidelines unconstitutional per se and as applied to the defendant.[1]

On March 14, 1988 John Joseph Senft plead guilty to a one count Information charging possession of marijuana with intent to distribute on November 16, 1987 in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D). Mr. Senft filed a motion and brief contesting the guidelines which replicated that of Martin Schwartz.

The Indictment against Desmond Smith contained two counts: Count I, possession of cocaine with intent to distribute on December 2, 1987 in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C); and Count II, conspiracy to possess cocaine with intent to distribute on December 2, 1987 in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and 21 U.S.C. § 846. A jury convicted Mr. Smith on both counts on March 1, 1988. Mr. Smith filed a motion adopting the arguments urged by defendants Schwartz and Senft.

Defendants Jean Vancol and Michael Monfiston were charged in a five count Indictment for actions occurring on February 1 and 2, 1988. The counts were: Counts I and II, possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) and 18 U.S.C. § 2; Count III, conspiracy to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and 21 U.S.C. § 846; Count IV, using a communication facility to facilitate the distribution of cocaine, in violation of 21 U.S.C. § 843(b); and Count V, resisting arrest in violation of 18 U.S.C. §§ 111 & 2.[2] Both defendants were found guilty of all counts on April 19, 1988 and subsequently filed motions contesting the Guidelines.

Arnulfo Rodriguez–Solis was indicted for being in the United States on December 11, 1987 after having been arrested and deported, in violation of 8 U.S.C. § 1326. He pled guilty on May 12, 1988 and filed a motion relying on the briefs filed by defendant Martin Schwartz.

Because all defendants raise the same arguments, they will be treated together.

Defendants urge that the Guidelines are unconstitutional because they violate separation of powers principles and are an invalid delegation of power from Congress to the Judicial Branch. Arguing for the

---

1. At oral argument, defendant Schwartz abandoned his claims that the Guidelines were invalid as applied and that the Guidelines violated the defendant's rights to due process. The other defendants have not pursued these arguments.

2. The government withdrew Count I of the Indictment and filed a Superseding Indictment for Count I which contained the charge listed here.

government, the United States Attorney contends the Sentencing Commission properly belongs in the Executive Branch and the Court should read the Act to place the Commission in that branch. The Court granted *amicus curiae* status to the Sentencing Commission. The Commission argues the placement of the Commission in the Judicial Branch is constitutional.

## I. *The Sentencing Commission and the Guidelines*

In Title II of the Comprehensive Crime Control Act of 1984, the Sentencing Reform Act, Pub.L. No. 98–473, 98 Stat. 1837, Congress mandated the establishment of a United States Sentencing Commission and the promulgation of sentencing guidelines by that body.

The Act labels the Commission "an independent commission" and places it in the judicial branch. 28 U.S.C.A. § 991(a) (West Supp.1988). The Commission consists of seven voting members, as well as the Attorney General or his designee, and the Chairman of the United States Parole Commission or his designee, as *ex officio*, nonvoting members. *Id.*; Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, § 235(b)(5), 98 Stat.1837, 2033 (1984).[3] The President appoints the voting members by and with the advice and consent of the Senate. *Id.* The Act requires that at least three members be federal judges, selected by the President after considering a list of six judges recommended by the Judicial Conference of the United States. *Id.*[4] The President may remove the Chairman and the members "only for neglect of duty or malfeasance in office or for other good cause shown." 28 U.S.C.A. § 991(a).

In mandating the Commission to "establish sentencing policies and practices," one of Congress's declared purposes was the elimination of sentencing disparities among defendants with similar records convicted of similar criminal conduct. 28 U.S.C.A. § 991(b) (West Supp.1988). In the Act, Congress specifically directed the Commission's formulation of the Guidelines. The sentencing range must be consistent with current law and the range for a term of imprisonment specified in the Guidelines may not be more than the greater of twenty-five percent or six months. 28 U.S.C.A. § 994(b) (West Supp.1988). The Act also lists several factors appropriate and inappropriate for the Commission to consider. § 994(e), (j), (k), (*l*), (n). In addition, the Guidelines are to specify substantial terms of imprisonment, or sentences near the maximum for certain categories of defendants. § 994(h), (i). The Act provides that the Guidelines take effect 180 days after being reported by the Commission, unless Congress passes legislation extending the date or modifying the Guidelines. § 994(p).

The Guidelines took effect November 1, 1987.

The sentencing court must impose a sentence within the range established by the Guidelines unless there are aggravating or mitigating factors not adequately considered by the Commission. 18 U.S.C.A. § 3553(b) (West 1985 & Supp.1988).[5] The defendant and the government may appeal sentences resulting from an incorrect application of the Guidelines or outside the range established by the Commission. 18 U.S.C.A. § 3742(a), (b) (West 1985 and Supp.1988).

In carrying out its statutory mandate, the Commission decided to base the Guidelines upon the offense charged by the government, rather than using a so-called real offense system. United States Sentencing Commission Guidelines Manual (hereinafter "Manual") 1.5–1.6 (October 1987). In formulating the sentencing

---

**3.** The Parole Commission Chairman or his designee will be an *ex officio* member for five years after the effective date of the Act. Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, § 235(b)(5), 98 Stat. 1837, 2033 (1984).

**4.** The Chairman and members are paid the annual salary of a United States Court of Appeals Judge. 28 U.S.C.A. § 992(c).

**5.** If the court deviates from the Guidelines or does not order full restitution, the reasons must be stated in open court. 18 U.S.C.A. § 3553(b) (West 1985 & Supp.1988).

range, the Commission established a base level number for each offense, which is increased for specific offense characteristics and adjusted for certain other factors. Manual, Chapters 2 & 3. The Guidelines also specify points to be given for the defendant's criminal history. Manual, Chapter 4. The guideline range is determined by the point at which the offense level intersects the criminal history category in the sentencing table. Manual, 5.2 (October, 1987). The Guidelines also specify the criteria for imposing probation and the term of supervised release, as well as restitution, fines, assessments and forfeitures. Manual §§ 5B1, 5D3, & 5E4.

## II. *Delegation*

■ Defendants first contend the Guidelines are unconstitutional because of alleged excessive delegation by Congress to the Commission.[6]

The Supreme Court has found Congress may delegate its legislative power if it enunciates an "intelligible principle" to which the delegatee must conform. *J.W. Hampton, Jr. & Co. v. United States*, 276 U.S. 394, 409, 48 S.Ct. 348, 352, 72 L.Ed. 624 (1928). In 1935, the Court employed the "intelligible principle" standard and struck down two delegations of power as excessive. *See A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 541–42, 55 S.Ct. 837, 848, 79 L.Ed. 1570 (1935); *Panama Refining Co. v. Ryan*, 293 U.S. 388, 429–30, 55 S.Ct. 241, 252–53, 79 L.Ed. 446 (1935). Since 1935, the Court has found no statute unconstitutional based upon excessive delegation. *Synar v. United States*, 626 F.Supp. 1374, 1383 (D.D.C. 1986), *aff'd, Bowsher v. Synar*, 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986). The Court has held Congress's "choice of means for effecting its declared purpose"

may be overturned only if "there is an absence of standards for the guidance of the [delegatee's] action, so that it would be impossible in a proper proceeding to ascertain whether the will of Congress has been obeyed." *Yakus v. United States*, 321 U.S. 414, 426, 64 S.Ct. 660, 668, 88 L.Ed. 834 (1944). This Court must determine whether the Congress has enunciated intelligible principles and sufficient standards.

Congress clearly stated the purposes of the Commission. The Guidelines must encompass "the need for sentence imposed, (A) to reflect the seriousness of the offense, to provide respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C.A. § 3553(a)(2) (West 1985 & Supp.1988); 28 U.S.C.A. § 991(b)(1)(A) (West Supp.1988). The Commission is also to provide certainty of sentence and avoid unjustified sentencing disparities among defendants with similar criminal histories convicted of similar offenses. 28 U.S.C.A. § 991(b)(1)(B) (West Supp.1988).

The Act places specific limits on the Guidelines. The sentencing range must be consistent with the current law and must not exceed the greater of six months or twenty-five percent. § 994(b). The Guidelines must be "neutral as to race, sex, national origin, creed and socioeconomic status of offender." § 994(d). The Act specifies categories of defendants who should receive a substantial term of imprisonment or a term of imprisonment at or near the maximum. § 994(h), (i).[7]

(h) The Commission shall assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized for categories of defendants in which the defendant is eighteen years old or older and—
(1) has been convicted of a felony that is—
(B) an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841), sections 1002(a), 1005, and 1009 of the Con-

---

6. Defendants do not contend the delegation is improper because it is a delegation of a "core function" of the legislative branch. *See Synar v. United States*, 626 F.Supp. 1374, 1385 (D.D.C.), *aff'd sub nom., Bowsher v. Synar*, 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986) (rejecting argument that authority "central to the legislative function" may not be delegated).

7. 28 U.S.C.A. § 994 states in relevant part:

Congress also enumerates certain factors for the Commission to consider in formulating the Guidelines. In creating categories of offenses, the Commission is to employ the following factors, if it finds them to be relevant: (1) the offense grade; (2) mitigating and aggravating circumstances; (3) the nature of the harm; (4) public opinion on the gravity of the offense; (5) community concern; (6) deterrence; and (7) incidence of the offense. § 994(c). In creating categories of defendants the Commission is to consider eleven enunciated factors, if it finds them to be relevant. § 994(d).[8]

Congress also listed other specific factors appropriate or inappropriate for the Commission to consider. *See* § 994(e), (j), (k), (*l*), (n).[9] For example, the following

trolled Substances Import and Export Act (21 U.S.C. 952(a), 955, and 959), and section 1 of the *Act of September 15, 1980* (21 U.S.C. 955a); and

(2) has previously been convicted of two or more prior felonies, each of which is—

(A) a crime of violence; or

(B) an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841), sections 1002(a), 1005, and 1009 of the Controlled Substances Import and Export Act (21 U.S.C. 952(a), 955, and 959), and section 1 of the Act of September 15, 1980 (21 U.S.C. 955a).

(i) The Commission shall assure that the guidelines specify a sentence to a substantial term of imprisonment for categories of defendants in which the defendant—

(1) has a history of two or more prior Federal, State, or local felony convictions for offenses committed on different occasions;

(2) committed the offense as part of a pattern of criminal conduct from which he derived a substantial portion of his income;

(3) committed the offense in furtherance of a conspiracy with three or more persons engaging in a pattern of racketeering activity in which the defendant participated in a managerial or supervisory capacity;

(4) committed a crime of violence that constitutes a felony while on release pending trial, sentence, or appeal from a Federal, State, or local felony for which he was ultimately convicted; or

(5) committed a felony that is set forth in section 401 or 1010 of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (21 U.S.C. 841 and 960), and that involved trafficking in a substantial quantity of a controlled substance.

28 U.S.C.A. § 994(h), (i) (West Supp.1988).

**8.** 28 U.S.C.A. § 994(d) states:

The Commission in establishing categories of defendants for use in the guidelines and policy statements governing the imposition of sentences of probation, a fine, or imprisonment, governing the imposition of other authorized sanctions, governing the size of a fine or the length of a term of probation, imprisonment, or supervised release, and governing the conditions of probation, supervised release, or imprisonment, shall consider whether the following matters, among others,

with respect to a defendant, have any relevance to the nature, extent, place of service, or other incidents of an appropriate sentence, and shall take them into account only to the extent that they do have relevance—

(1) age;

(2) education;

(3) vocational skills;

(4) mental and emotional condition to the extent that such condition mitigates the defendant's culpability or to the extent that such condition is otherwise plainly relevant;

(5) physical condition, including drug dependence;

(6) previous employment record;

(7) family ties and responsibilities;

(8) community ties;

(9) role in the offense;

(10) criminal history; and

(11) degree of dependence upon criminal activity for a livelihood.

The Commission shall assure that the guidelines and policy statements are entirely neutral as to the race, sex, national origin, creed, and socioeconomic status of offenders.

28 U.S.C.A. § 994(d) (West Supp.1988).

**9.** 28 U.S.C.A. § 994(e) provides:

(e) The Commission shall assure that the guidelines and policy statements, in recommending a term of imprisonment or length of a term of imprisonment, reflect the general inappropriateness of considering the education, vocational skills, employment record, family ties and responsibilities, and community ties of the defendant.

28 U.S.C.A. § 994(e) (West Supp.1988).

In addition, § 994(j), (k), (*l*) further describe Congress's intent:

(j) The Commission shall insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense, and the general appropriateness of imposing a term of imprisonment on a person convicted of a crime of violence that results in serious bodily injury.

(k) The Commission shall insure that the guidelines reflect the inappropriateness of imposing a sentence to a term of imprisonment for the purpose of rehabilitating the defendant, or providing the defendant with needed

considerations should not affect the length of imprisonment: "education, vocational skills, employment record, family ties and responsibilities, and community ties of the defendant." § 994(e).

As with the purposes of the Commission itself, Congress clearly and specifically states the purposes the Guidelines are to serve. Likewise, Congress has stated in great detail the limits within which the Guidelines are to operate and the information to be used in arriving at the Guidelines.

I conclude that sufficient standards exist to determine if the Guidelines conform to Congress's intent, and that therefore delegation is not excessive.

### III. *Separation of Powers*

■ Defendants also contend Congress's delegation to the Commission violates separation of powers principles because the Judicial Branch is issuing substantive guidelines, and because the President retains considerable power over the Commission through his authority to remove and appoint commissioners. The Justice Department agrees with defendants that the Commission is improperly placed in the Judicial Branch and argues it should be judicially removed to the Executive Branch because it performs an executive function. The Commission avers its placement in the Judicial Branch is proper, and separation of powers is offended neither by the Commis-

sion's function nor by the President's appointment and removal power.

"The Constitution sought to divide the delegated powers of the new Federal Government into three categories, Legislative, Executive, and Judicial, to assure, as nearly as possible, that each branch of government would confine itself to its assigned responsibility." *Immigration and Naturalization Service v. Chadha,* 462 U.S. 919, 951, 103 S.Ct. 2764, 2784, 77 L.Ed.2d 317 (1983). The Constitution established a system of checks and balances between the three branches which the Framers believed would protect individual liberty. *See Bowsher v. Synar,* 478 U.S. 714, 106 S.Ct. 3181, 3186, 92 L.Ed.2d 583 (1986). "To preserve those checks, and maintain the separation of powers, the carefully defined limits on the power of each Branch must not be eroded." *Chadha,* 462 U.S. at 957–58, 103 S.Ct. at 2787. "The hydraulic pressure inherent in each of the separate Branches to exceed the outer limits of its power, even to accomplish desirable objectives, must be resisted." *Id.* at 951, 103 S.Ct. at 2784. Although the power of each branch is "functionally identifiable," the branches are not "hermetically" sealed off from each other. *Id.* (citing *Buckley v. Valeo,* 424 U.S. 1, 121, 96 S.Ct. 612, 683, 46 L.Ed.2d 659 (1976)).

Addressing the constitutionality of the independent counsel provisions of the Ethics in Government Act of 1978, the Supreme Court summarized the standard to

---

educational or vocational training, medical care, or other correctional treatment.

(*l*) The Commission shall insure that the guidelines promulgated pursuant to subsection (a)(1) reflect—

(1) the appropriateness of imposing in incremental penalty for each offense in a case in which a defendant is convicted of—

(A) multiple offenses committed in the same course of conduct that result in the exercise of ancillary jurisdiction over one or more of the offenses; and

(B) multiple offenses committed at different times, including those cases in which the subsequent offense is a violation of section 3146 (penalty for failure to appear) or is committed while the person is released pursuant to the provisions of section 3147 (penalty for an offense committed while on release) of title 18; and

(2) the general inappropriateness of imposing consecutive terms of imprisonment for an offense of conspiring to commit an offense or soliciting commission of an offense and for an offense that was the sole object of the conspiracy or solicitation.

28 U.S.C.A. § 994(j), (k), (*l*) (West Supp.1988).

To enable a sentencing judge to take into account a defendant's cooperation § 994(n) states:

(n) The Commission shall assure that the guidelines reflect the general appropriateness of imposing a lower sentence than would otherwise be imposed, including a sentence that is lower than that established by statute as minimum sentence, to take into account a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.

28 U.S.C.A. § 994(n) (West Supp.1988).

be used in analyzing a separation of powers issue. *Morrison v. Olson*, —— U.S. ——, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988). "The ... question to be addressed is whether the Act, taken as a whole, violates the principles of separation of powers by unduly interfering with the role of the Executive [or the Judicial] Branch." *Id.* 108 S.Ct. at 2620. In constructing this standard the Court reviewed several of its recent decisions in the area, among them *Bowsher v. Synar*, 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986), and *Commodities Futures Trading Commission ("CFTC") v. Schor*, 478 U.S. 833, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986). *Bowsher* held that the Balanced Budget and Emergency Deficit Control Act violated separation of powers by placing responsibility for the performance of an executive function in the hands of the Comptroller General, an officer controlled by Congress through its power of removal. 106 S.Ct. at 3192. The *Morrison* Court characterized *Bowsher* as addressing the issue of the increase of Congressional power at the expense of another branch. *Morrison*, 108 S.Ct. at 2620 (citing *Schor*, 106 S.Ct. at 3261). Confronting the issue of whether the assignment of state law counterclaims to the CFTC violated separation of powers or Article III, the Court in *Schor* defined the issue before it as "whether Congress impermissibly undermined, without appreciable expansion if its own power, the role of the Judicial Branch." 106 S.Ct. at 3261 (cited in *Morrison*, 108 S.Ct. at 2620). To resolve this issue, the Court considered the nature of judicial power reserved to Article III courts, the extent of infringement upon the Judicial Branch by the nonArticle III forum, the origin and importance of the right at issue, and the congressional purpose for the infringement. *Schor*, 106 S.Ct. at 3258. *Schor's* analysis parallels the earlier functional analysis in *Nixon v. Administrator of General Services*, 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977). The Court in *Nixon* stated:

> Like the District Court, we therefore find that appellant's argument rests upon an "archaic view of the separation of powers as requiring three airtight departments of government." Rather, in determining whether the Act disrupts the proper balance between the coordinate branches, the proper inquiry focuses on the extent to which it prevents the Executive Branch from accomplishing its constitutionally assigned functions. Only where the potential for disruption is present must we then determine whether that impact is justified by an overriding need to promote objectives within the constitutional authority of Congress.

425 U.S. at 443, 97 S.Ct. at 2790 (citations omitted).

This Court will apply the analysis enunciated by the Supreme Court in *Morrison*, *Bowsher* and *Schor* to determine if placement of the Sentencing Commission in the Judicial Branch impermissibly affects the Executive or Judicial Branch. This analysis poses two questions. First, has one branch usurped the functions of another branch? *Morrison*, 108 S.Ct. at 2620. Second, does the Sentencing Reform Act "impermissibly undermine" the power of the Executive or Judicial Branch, *Morrison*, 108 S.Ct. at 2620 (citing *Schor*, 106 S.Ct. at 3258), or disturb "the proper balance between the coordinate branches [by] prevent[ing] the Executive [or Judicial] Branch from accomplishing its constitutionality assigned functions"? 108 S.Ct. at 2620 (citing *Nixon*, 425 U.S. at 443, 97 S.Ct. at 2790).

### A. Nature of the Commission's Activities

The separation of powers analysis begins by analyzing and characterizing the activity of the Commission. Under the Sentencing Reform Act, Congress delegated significant policy-making authority to the Commission. The Commission is to "establish sentencing policies and practices for the Federal criminal justice system" and to "develop means of measuring the degree to which the sentencing, penal, and correctional practices are effective in meeting the purposes of sentencing...." 28 U.S.C.A. § 991(b)(1), (2) (West Supp.1988). In promulgating the Guidelines, Congress authorized the Commission to make the follow-

ing decisions: whether the sentence should be for probation, imprisonment or a fine; the amount of the fine and length of imprisonment or probation; whether the sentence should include a term of supervised release and the length of that term; and whether multiple sentences should run concurrently or consecutively. § 994(a)(1). In addition, the Commission was mandated to issue policy statements on sanctions, conditions of probation and release, sentence modification, fine imposition, the authority of the Court to accept or reject a plea agreement and temporary release and prerelease custody. § 994(a)(2).

In the Guidelines Manual, the Commission detailed several policy decisions made during formulation of the Guidelines. The Commission decided to base sentences not upon a "real offense" system that includes all identifiable conduct, but upon a "charge offense" system that includes only that conduct included in the elements of the offense for which the defendant was convicted. Manual, 1.5–1.6 (October 1987).[10]

Congress gave substantial authority to the Commission, some of which it declined to exercise in issuing its initial Guidelines. The Commission did not limit the factors justifying a court's departure from the Guidelines. Manual, 1.6–1.7 (October 1987). Plea agreement practices were not changed significantly by the Commission. *Id.* at 1.8. However, the Commission reclassified several offenses as serious and requiring mandatory imprisonment. *Id.* at 1.8–1.9 (October 1987).

The Commission's policy decisions also affected the basic structure of the Guidelines. The Commission established the base level and specific offense characteristics for each federal offense, as well as enumerating adjustments in the offense level and the value for each. The Guidelines also list the number of points to be given each aspect of the defendant's criminal history.

Additionally, the Guidelines are not discretionary but mandatory. A court must impose a sentence in conformance with the Commission's Guidelines unless it finds aggravating or mitigating circumstances not considered by the Commission. 18 U.S.C.A. § 3553(b) (West 1985 & Supp.1988). The sentencing court must consider relevant policy statements issued by the Commission. 18 U.S.C.A. § 3553(a)(5) (West 1985 & Supp.1988). An appellate tribunal may review the sentence to ensure its congruence with the Guidelines. 18 U.S.C.A. § 3742(e) (West Supp.1988).

The Commission exercised broad discretion in resolving policy issues within its mandate, and issued specific Guidelines binding on federal judges, at both the sentencing and the appellate levels. It is questionable whether this type of authority is most properly characterized as judicial, legislative or executive. Because the Commission does not adjudicate any cases or controversies,[11] it has no judicial function. The policy decisions and issuance of rules with the force of law resembles the legislative process. On the other hand, the Constitution gives to the President the authority to "take care that the Laws be faithfully executed...." U.S. Const., art. II, § 3. The Commission executes the laws by promulgating the Guidelines pursuant to the Sentencing Reform Act. In this way, the Commission functions in the same manner as many administrative agencies within the Executive Branch, to which Congress has delegated legislative power. Thus, for the purposes of separation of powers analysis, the Court finds that the Commission performs a hybrid legislative-executive function.

---

**10.** The Commission did include some real offense elements in the final Guidelines. Manual, 1.5–1.6 (October 1987).

**11.** The Commission does consider petitions filed by defendants requesting modification of Guidelines employed in sentencing that defendant. 28 U.S.C.A. § 994(s) (West Supp.1988). However, the request must be based upon changed circumstances unrelated to the particular defendant. *Id.* A defendant's petition, therefore, only serves as one more source of input to the Commission when it considers alteration of the Guidelines. The Commission does not review or modify the sentence imposed on a particular defendant.

## B. *Effect on the Executive Branch*

The Department of Justice argues that Congress's assignment of the Commission to the Judicial Branch violates separation of powers principles because the Commission performs an executive function properly belonging to the President. As discussed above, the Commission does perform a policy-making function ordinarily delegated to the Executive Branch. To determine the effect on the Executive Branch of the location of the Commission within the Judicial Branch, however, the nature and control of the function must be examined.

It is not clear that performance of this function is inherently executive. It might properly be performed, for example, by Congress. However, even if the function is classified as executive, placing it within the Judicial Branch is not an impermissible transfer of authority out of the Executive Branch. The President retains the power to remove Commission members "for neglect of duty or malfeasance in office or for other good cause shown." 28 U.S.C. § 991(a) (West Supp.1988). Thus here, as in *Bowsher*, an outside branch exercises the power of removal subject to statutory restrictions. The present case differs from *Bowsher*, however, in that the power to remove officers performing executive functions·remains with the Executive, whereas in *Bowsher* the removal power lay with Congress. *See Bowsher*, 106 S.Ct. at 3189.[12] That the President's power is limited to "for cause" removals does not change the analysis; the *Morrison* Court upheld a similar limitation on the Executive's power to remove the independent counsel because the President retained sufficient control over the independent counsel to satisfy separation of powers concerns. *See* 108 S.Ct. at 2618–21.

In addition, the President has the power of appointment over the Commission, a power that Congress does not have over the Comptroller General and that the President does not have over the independent counsel.[13] No impermissible transfer of authority out of the Executive Branch occurs because the Executive Branch retains control through appointment and removal.

The next issue is whether, under *Schor*, the Sentencing Reform Act impermissibly diminishes executive power. *See Morrison*, 108 S.Ct. at 2620. I conclude it does not. First, both the nature and extent of any infringement upon the Executive are minimal. Sentencing is traditionally a function shared by all three branches and not reserved exclusively to the Executive Branch. *Geraghty v. United States Parole Commission*, 719 F.2d 1199, 1211 (3d Cir.1983), *cert. denied*, 465 U.S. 1103, 104 S.Ct. 1602, 80 L.Ed.2d 133 (1984). Congress itself could have set up sentencing ranges defined by offense and criminal history factors instead of delegating this task to the Executive or Judicial Branch. Prior to the Guidelines, Congress limited a judge's discretion in sentencing by limiting probation, setting a mandatory minimum and maximum and precluding a rehabilitative sentencing option for certain offenders. *See id.* The Executive Branch impacted upon the sentence through its selection of the offense charged and setting of parole by the Parole Commission. *Id.* The Guidelines narrow the sentencing range previously established by Congress, an authority not previously possessed by the Executive. The Executive Branch continues to affect sentencing through the Attorney General's authority to decide what offense to charge and whether to accept a plea to a lesser charge.[14]

**12.** Congress may remove the Comptroller General for "(i) permanent disability; (ii) inefficiency; (iii) neglect of duty; (iv) malfeasance; or (v) a felony or conduct involving moral turpitude." 31 U.S.C. § 703(e)(1) (1982) (quoted in *Bowsher*, 106 S.Ct. at 3189).

**13.** Congressional officers recommend a list of three, but the President nominates the·Comptroller General. 31 U.S.C. § 703(a) (1982). The President appoints all members of the Sentencing Commission, with the judge-commissioners being recommended by the Judicial Conference. 28 U.S.C.A. § 991 (West Supp.1988).

**14.** The Sentencing Reform Act repealed the statute establishing the Parole Commission but extended the life of the Commission and its authority to set release dates for a five-year period following the effective date of the Act. Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, §§ 218, 235, 98 Stat. 1837, 2027, 2033

The second issue under *Schor* is Congress's purpose in placing the Sentencing Commission in the Judicial Branch. Under the *Schor* analysis, no one factor determines whether an action violates separation of powers principles. 106 S.Ct. at 3258. Congress's reasons for placing the Commission in the Judicial Branch are less than pellucid. The legislative history indicates Congress's view that the Parole Commission, an executive agency, should no longer influence the length of sentences, and that "sentencing should remain primarily a judicial function." S.Rep. No. 98–225, 98th Cong., 2d Sess. 37, 54, 159, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3220, 3237, 3342. However, the Executive's power of appointment and removal gives that Branch control. Thus, the Act does not in fact fulfill the stated congressional purpose of retaining judicial control over sentencing. Although the congressional justification for placing the commission outside the Executive consequently is weak, the infringement upon the Executive is negligible. Taking all factors into account, there is no unconstitutional withdrawal of power from the Executive.

The Sentencing Reform Act does not violate the principles of spearation of powers through impermissibly interfering with the functions of the Executive Branch.

### C. *Effect on Judicial Branch*

Even though the placement of the Sentencing Commission does not have an impermissible effect on the Executive Branch, its effect on the Judicial Branch still must be examined. The Court will now review whether the placement in the Judicial Branch of an administrative, policy-making body over which the President has the power of appointment and removal offends separation of powers principles.

Defendants contend the President's power of appointment infringes upon the Judiciary. The courts appoint all other members of bodies within the Judicial Branch performing non-adjudicative functions.[15] The President, however, appoints all voting and nonvoting members of the Commission. The Chairman of the Parole Commission and the Attorney General, both executive officers appointed by the President, serve as nonvoting *ex officio* members. The President selects the three judge-commissioners from a list of six federal judges recommended by the Judicial Conference. The four other voting members are appointed by the President after consultation with other groups.

Under the Appointments Clause, the President must appoint all "Officers of the United States" with the advice and consent of the Senate, but the President alone, the courts, or Heads of Departments may ap-

---

(1984). However, the Parole Commission Chairman serves as an *ex officio* member of the Sentencing Commission for the same five-year period. Pub.L. No. 98–473, § 235, 98 Stat. at 2033.

**15.** Although federal courts are limited to a case or controversy adjudication, grants of authority to the Judicial Branch to perform tasks in aid of the judicial function have been upheld. Within the limits set by the substantive laws passed by Congress and the Constitution, the United States Supreme Court has complete control over promulgating rules of civil procedure and of criminal procedure, and amending the Federal Rules of Evidence. *See* 28 U.S.C. §§ 2072, 2076 (1982); 18 U.S.C. §§ 3771, 3772 (1982). The Supreme Court itself appoints the members of advisory committees on the rules.

The Supreme Court also appoints and removes the Director and Deputy Director of the Administrative Office of the United States Courts. 28 U.S.C. § 601 (1982). The Chief Justice convenes the Judicial Conference of the

United States which studies the business of the courts and the operation of the rules. 28 U.S.C. § 331 (1982). The Conference consists of the chief judge of each circuit, the chief judge of the Court of International Trade and a district judge chosen by the circuit and district judges of that circuit. *Id.* In addition, the chief judge of each circuit has the authority to investigate judicial misconduct and appoint a committee for this purpose. 28 U.S.C. § 372(c) (1982).

The Federal Judicial Center provides support and training to the Judicial Conference and court personnel. 28 U.S.C. § 620 (1982). The Center is supervised by a Board composed of the Chief Justice, other judges selected by the Judicial Conference and the Director of the Administrative Office. 28 U.S.C. § 621 (1982). The Board appoints the Director of the Center and may remove at its pleasure. 28 U.S.C. § 624 (1982). Probation Officers are appointed by the district court and removable for cause by that body. 18 U.S.C. § 3602 (Supp. IV 1986) (effective 11/1/87, former provisions in 18 U.S.C. § 3654 (1982) were the same).

point "inferior officers." [16] "Officers of the United States" are those officials administering and enforcing public laws. *Buckley v. Valeo*, 424 U.S. 1, 140–41, 96 S.Ct. 612, 692–93, 46 L.Ed.2d 659 (1975).

If the commissioners are "Officials of the United States" within the meaning of the Appointments Clause, the President must appoint them. If the Commissioners are considered inferior officers, the Appointments Clause permits Congress to authorize interbranch appointments. Congress's authority to do so, however, is limited by separation of powers doctrine to the extent that the interbranch appointment impairs the constitutional functions of one of the branches. *See Morrison*, 108 S.Ct. at 2610. In addition, creation of an interbranch appointment is invalid if there is "some 'incongruity' between the functions normally performed by [one branch] and the performance of their duty to appoint." *Id.* (citing *Ex Parte Siebold*, 100 U.S. 371, 398, 25 L.Ed. 717 (1879)).

There is no incongruity between the President's authority to appoint commissioners and the functions usually performed by the Executive. The President normally appoints the members of commissions performing legislative-executive functions, such as the Sentencing Commission. Moreover, the appointment power does not impair the constitutionally assigned functions of either the Executive, as discussed above, or the Judiciary, as discussed below.

The Department of Justice and the defendants also contend that the President's power to remove the Commission members gives the President control over a Judicial Branch agency and thus violates the principles of separation of powers.[17] In *Bowsh-*

*er*, the Court found that Congress's ability to remove the Comptroller General violates the separation of powers because he was given an executive function under the Balanced Budget and Emergency Deficit Control Act. 106 S.Ct. at 3192. Congress's power of removal gave it control over the Comptroller General and impermissibly intruded upon the performance of a function delegated by the Constitution to the Executive Branch. *Id.* But in *Morrison* the Court upheld Congress's "for cause" limitation on the Attorney General's ability to remove the independent counsel because it did not interfere with the President's ability to perform his constitutionally assigned role. 108 S.Ct. at 2618–21. The Court noted "[t]his is not a case in which the power to remove an executive official has been completely stripped from the President, thus providing no means for the President to ensure the 'faithful execution' of the laws." *Id.* 108 S.Ct. at 2619. I conclude interbranch removal or congressional limitation of the removal power only violates separation of powers if it prevents a branch from performing its constitutionally delegated function.

The Commission does not impermissibly affect the Judicial Branch in violation of the separation of powers. First, no function of the Judicial Branch has been usurped because the Commission performs a legislative-executive function, and not a judicial one. Second, the commission does not "impermissibly undermine" the powers of the Judicial Branch or prevent the branch from fulfilling its constitutionally assigned function. Although the Commission is placed in the Judicial Branch, the Judiciary's ability to impartially adjudicate cases and controversies is not impaired.

---

**16.** The appointments clause provides that the President

    shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

U.S. Const. art. II, § 2, cl. 2.

**17.** The Executive Branch cannot remove any other member of the Judicial Branch. Federal judges have life tenure and may not be removed except through impeachment by Congress. Excluding the Commission, the Judicial Branch may remove all other members of the non-adjudicative components of the Branch: the Advisory Rules Committee, the Administrative Office, the Judicial Conference, the Federal Judicial Center and Probation Officers.

The individual judges serving on the Commission, if they deem it necessary, may recuse themselves from cases involving the Commission or the Guidelines. Judges on the Commission "do not wear their robes in the commission room." *See In re Application of President's Commission on Organized Crime (Scaduto)*, 763 F.2d 1191, 1204 (11th Cir.1985) (Roney, J., concurring). That is, the individual Article III judges act not in their judicial capacity, but in their capacity as Commissioners, when they serve on the Commission. The President's power to appoint and remove Article III judges from their posts as Commissioners does not affect their ability to function as judges. The President cannot change the judges' judicial salaries or their tenure as judges. The vast majority of judges do not serve on the Commission and are unaffected by its placement in the Judicial Branch. In sum, the Commission does not interfere with either the Judiciary's impartiality or its jurisdiction under Article III.

In applying separation of powers analysis, the Supreme Court has sometimes focused on the necessity for any action by one branch that infringes upon another branch. *See Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 107 S.Ct. 2124, 2134, 95 L.Ed.2d 740 (1987) (court's authority to appoint private prosecutor in contempt proceedings based upon necessity); *Schor*, 106 S.Ct. at 3260 (exercise of Article III jurisdiction limited to that which is necessary to enable non-Article III tribunal to fulfill its function). And in *Morrison*, the Court found limitation of the removal power necessary to fulfill Congress's intent to create independence for the special prosecutor. 108 S.Ct. at 2618–21. Here, no congressional purpose necessitates placement of the Commission in the Judicial Branch or vesting the President with the power to appoint and remove Com-

mission members.[18] However, the Commission performs a legislative-executive and not a judicial function. I believe that in this instance because there is minimal infringement upon the Judiciary, just as there was with the Executive Branch, minimal Congressional justification is required. The placement of the Sentencing Commission in the Judicial Branch and the grant of appointment and removal to the President does not violate the separation of powers principles.[19]

## IV. *Article III*

■ Given that the creation of the Commission does not violate the separation of powers, a further question arises: whether the Commission violates the limitations of Article III. As discussed above, the Commission performs a legislative-executive function, not a judicial function. It adjudicates no cases or controversies. The Department of Justice and the defendants argue that a Judicial Branch agency that includes three Article III judges may not perform non-judicial functions.

The express terms of Article III limit the exercise of judicial power to the adjudication of cases and controversies. *See Muskrat v. United States*, 219 U.S. 346, 356, 31 S.Ct. 250, 253, 55 L.Ed. 246 (1911). Congress cannot assign executive or administrative functions of a nonjudicial nature to Article III judges. *Buckley v. Valeo*, 424 U.S. 1, 123, 96 S.Ct. 612, 654, 46 L.Ed.2d 659 (1975); *see United States v. Ferreira*, 54 U.S. (13 How.) 40, 14 L.Ed. 40 (1851); *Hayburn's Case*, 2 U.S. (2 Dall.) 408, 1 L.Ed. 436 (1795).[20] "The purpose of this limitation is to help insure the independence of the Judicial Branch and to prevent the judiciary from encroaching into areas reserved for the other branches." *Morrison*, 108 S.Ct. at 2610–14 (citing *United States Parole Commission v. Geraghty*,

---

**18.** *See supra* at pages 339–40 for a discussion of Congress's purpose for placing the Commission in the Judicial Branch.

**19.** Because of the above resolution, the Court declines to address the potential problems created by the service of Article III judges on a Commission located in the Executive Branch. *See In re President's Commission on Organized Crime Subpoena of Scarfo*, 783 F.2d 370 (3d Cir.1986); *In re Application of President's Com-*

*mission on Organized Crime (Scaduto)*, 763 F.2d 1191 (11th Cir.1985).

**20.** In 1792, circuit courts refused to pass upon the claims of pensioners, saying such review was an executive duty that could not be conferred upon the judiciary. *Hayburn's Case*, 2 U.S. (2 Dall.) 408, 409–12, 1 L.Ed. 436 (1792). The Supreme Court also found that a district judge sitting as a commissioner and passing upon claims under a treaty did not perform a

445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980)).[21]

The performance of legislative-executive functions by the Sentencing Commission does not violate the strictures of Article III. Because the Commission does not infringe upon the operation of the Judicial Branch, the Judicial Branch may fulfill its constitutionally assigned function of adjudication of cases or controversies without compromise of its independence by the Commission. In addition, the Court has concluded that there is no encroachment upon the Executive Branch. The placement of the Commission in the Judicial Branch, therefore, is not violative of Article III.

In summary, the Court has found: (1) there is no excessive delegation to the Commission; (2) the creation of the Commission does not breach separation of powers; and (3) the placement of the Commission in the Judicial Branch does not violate Article III.

An order will be entered denying defendants' motions.

judicial function and these decisions were not reviewable by the Supreme Court. *U.S. v. Ferreira,* 54 U.S. (13 How.) 40, 50–51, 14 L.Ed. 40 (1851).

**21.** *See infra* note 15 for a discussion of non-adjudicative agencies within the Judicial Branch.