UNITED STATES of America

v.

Miguel Dario RESTREPO.

Crim. No. 88–00086.

United States District Court,
E.D. Pennsylvania.

Aug. 16, 1988.

Oscar S. Rodriguez, Coral Gables, Fla., Patrick J. Egan, Doylestown, Pa., for Miguel Dario Restrepo.

Robert N. Scola, Jr., Coral Gables, Fla., for John Jairo Rave.

Robert Goldman, U.S. Atty.'s Office, Philadelphia, Pa., for U.S.

OPINION *

LOUIS H. POLLAK, District Judge.

As cases involving criminal activity subsequent to the coming into force of the guidelines have reached the stage of trial or plea, issues have been raised as to the constitutionality of the guidelines. Within this Circuit there have been discrepant responses as there have been in other Circuits.

In Delaware, Judge Schwartz, on July 8 of this year, rejected a challenge to the validity of the guidelines. *United States of America v. Martin Schwartz,* 692 F.Supp. 331 (D.Del.1988). Less than two weeks later, my colleague, Judge Newcomer, here in this district, concluded that the guidelines are not valid. *United States of America v. William Waddell Brown,* 690 F.Supp. 1423 (E.D.Pa.1988). The issues appear to be headed for disposition by the Supreme Court in the coming term. The Court has granted certiorari in *United States v. Mistretta*—that is two cases, Nos. 87–1904 and 87–7028. Certiorari was granted on June 13, 1988, —— U.S. ——, 108 S.Ct. 2818, 100 L.Ed.2d 920, and the argument will take place in the fall.

No issues of constitutionality have been tendered in the cases now before me. The evident reason is that the parties, that is to say the United States and the two defendants, are in agreement on the disposition of these cases. They are in agreement that within the framework of the guidelines' structure, but on the basis of what the parties believe to be justified departures from the relevant guidelines—that is to say departures justified by the guideline struc-

---

* This is a bench opinion; minor editorial changes have been made to clarify syntax, to drop super-fluous meanderings and, in general, to enhance intelligibility.

ture itself—the sentences which commend themselves both to the Government and to the defendants can be supported.

The Probation Office has registered its disagreement, feeling that substantially longer sentences than those agreed upon should be imposed. Rather than a 60-month sentence, the Probation Office would see in each case a sentence of 188 months, three times as long.

I would say that I have found very helpful the submissions of counsel which I requested, both the written submissions and the oral discussion at our hearing on April 29, and the supplementary discussion this morning. I have also found very helpful—and I would be remiss if I did not make the point—the characteristically thoughtful and responsible submissions of the Probation Office. The Probation Office has new and very demanding burdens put upon it by the guideline system, and in this instance, which is the first case that I have had under the guidelines, the Probation Office has responded with exactly the diligence and care and sensitivity that this Court has taken for granted from that office.

The gravamen of the difficulty presented in these cases comes to this. The plea agreements contemplate that in each instance two charges will be dismissed and one will remain, and sentence will be imposed under that remaining charge. The two charges to be dismissed in each case are charges of possession with intent to distribute a quantity of drugs which amounts to 30 kilos of cocaine, and a conspiracy to accomplish that end. Those charges, the substantive and conspiracy charges with respect to possession with intent to distribute, are charges arising under 21 U.S.C. §§ 841(a)(1) and 846, which, if sustained, would call for mandatory minimum sentences of ten years under the governing statutes, and potential sentences running up to life.

By contrast, the count that in each case the defendants have undertaken to plead guilty to, the count under 21 U.S.C. § 856, which charges each defendant with managing or controlling a room for the purpose of unlawfully manufacturing, or for the pur-

pose of unlawfully storing, a controlled substance, calls for a prison term of not more than 20 years.

The broad question that is presented by these plea agreements is whether, within the framework of the guidelines, I have authority, and it is an appropriate exercise of my discretion, to accept an agreement under which the two counts that call for mandatory minimum sentences of ten years may be dismissed, and the remaining count retained under circumstances in which the sentence agreed between the Government and the defendants for that remaining count would be a period of 60 months or five years—namely, half the minimum sentence that would be contemplated by the statute governing the two dismissed counts, and less than half of what would be contemplated by the applicable guideline ranges if those counts were not dismissed.

It is the disjunction between the agreed 60-month sentence, and the far greater sentences that would be called for under the two counts to be dismissed in each instance, that has led the Probation Office to make the recommendation that no sentence should be agreed to by the Court which does not reach 188 months for each of the defendants.

The problem that I have described is compounded by the fact that the agreed sentence of 60 months for the count under which sentence is to be imposed is a sentence which is, in Mr. Restrepo's case, almost double, and, in Mr. Rave's case, slightly more than double, the top of the guideline range for an offense under 21 U.S.C. § 856.

The question whether I can accept the plea agreement under the circumstances, within the context of the guidelines, is a question to be addressed by reference to the provisions of the guidelines' policy statement captioned, "Standard for Acceptance of Plea Agreements," and which is numbered § 6B1.2. Subsection (a) of that set of standards provides as follows: "In the case of a plea agreement that includes the dismissal of any charges or an agreement not to pursue potential charges [Rule 11(e)(1)(A)], the court may accept the

agreement if the court determines, for reasons stated on the record, that the remaining charges adequately reflect the seriousness of the actual offense behavior and that accepting the agreement will not undermine the statutory purposes of sentencing."

Subsection (c) of 6B1.2 provides: "In the case of a plea agreement that includes a specific sentence [Rule 11(e)(1)(C)], the court may accept the agreement if the court is satisfied either that:

(1) the agreed sentence is within the applicable guideline range; or

(2) the agreed sentence departs from the applicable guideline range for justifiable reasons."

The first question to be considered is whether the requirements of subparagraph (a) are met—i.e., whether it is determinable by this court "for reasons stated on the record, that the remaining charges adequately reflect the seriousness of the actual offense behavior and that accepting the agreement will not undermine the statutory purposes of sentencing" in a situation in which "a plea agreement ... includes the dismissal of any charges."

On the face of it, there would appear to be a question whether dismissal of charges under 21 U.S.C. §§ 841 and 846, under circumstances in which the offenses there charged involve a quantity of drugs so great that a mandatory minimum of ten years would be called for, can be squared with pleas of guilty to a remaining charge in which there is no statutory minimum, and the guidelines would call for sentences for these two defendants of two to three years, approximately, and in which even the agreed sentence would only come to five years.

It has been made apparent in the submissions to this court that the cases to be made under §§ 841(a)(1) and 846, though easily described on paper, would be indeed difficult for the Government to present to a jury. Taking the Government's case at its strongest, as the Assistant United States Attorney has very properly acknowledged, there is a real question whether the jury would be persuaded that the defendants, or either of them, were/was involved with the actual drugs directly, or whether quite scrupulously the defendants maintained an entire separation from the drugs allegedly involved, and were concerned simply with the maintenance of the apartment in which the drugs were stored, as reflected in the § 856 count.

The Government's burden in making its case is significantly complicated by the important Government interest in maintaining as anonymous and confidential the identity of the Government informant, the person who, in the Government's memorandum, is described as "the cooperating individual who supplied the investigating agents with probable cause for the issuance of the search warrant."

Clearly, this is an important Government interest. Taken together with the substantive difficulty of proving the Government's case under the counts proposed to be dismissed, I have to conclude that there is significant doubt whether these defendants, if tried under §§ 841(a)(1) and 846, would be convicted on those charges. Under those circumstances, I find no difficulty in concluding that the remaining count, a very serious charge indeed, does "adequately reflect the seriousness of the actual offense behavior." § 6B1.2(a).

Moreover, bearing in mind the particularly strong Governmental interest in not compromising the identity of its "cooperating individual," I am clear that, within the meaning of § 6B1.2(a) "accepting the agreement will not undermine the statutory purposes of sentencing."

Up to this point, I have treated the issue of the dismissal of the first two counts as if that were an issue separable from the appropriateness of the agreed sentence on the 21 U.S.C. § 856 count. Basically, any such separate calculation is an unreasonable one. The plea agreement before the court is an integrated whole, and I wish to turn next, as I am obliged to, to the considerations called for under § 6B1.2(c), to which I have referred, that govern the question of acceptance or nonacceptance of "a plea

agreement that includes a specific sentence."

But before doing that, I do wish to point out that if the plea agreement is deemed by me to be acceptable under § 6B1.2(c), I think that fact would tend to confirm the conclusion I have already arrived at under § 6B1.2(a), governing the dismissal of certain charges and the retention of another, "that accepting the agreement will not undermine the statutory purposes of sentencing."

Now, the question under subparagraph (c) is whether, given the fact that the proposed sentences of 60 months exceed greatly the guideline ceilings for both Mr. Restrepo and Mr. Rave, which respectively are 33 and 27 months, nevertheless, "the agreed sentence departs from the applicable guideline range for justifiable reasons." In addressing this question, let me state—and then put to one side—factors which, it seems fair to infer, have led the defendants on the one hand, and the Government on the other, to arrive at the proposed plea agreement.

For the defendants, the certainty of a 60-month sentence could reasonably be regarded as far more congenial than the potential of being convicted under counts which call for a statutory mandatory minimum of ten years, and for which the guidelines would range well above ten years.

From the Government's point of view, achieving a 60-month sentence for these defendants, pursuant to plea, achieves a Government objective of imposing a very substantial sentence without exposing the Government to the real difficulties that may be involved in prosecuting this case—not alone under the counts to be dismissed, but under the count to be retained. As I have already noted, the Government has very important reasons for protecting the anonymity of its informant. An agreed sentence that avoids all the problems of trial pays important dividends to the Government.

The facts which I may appropriately look at to assess the radical upward revision of the sentence to a 60-month agreed term derive essentially from the following. In § 3553(b) of Title 18, Congress has the following to say under the caption "Application of guidelines in imposing a sentence." "The court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission." 18 U.S.C. § 3553(b).

In this instance, I have been urged to consider as a factor "an aggravating circumstance ... of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." That factor is that the quantity of drugs allegedly stored in the premises, which the defendants have conceded that they managed or controlled for drug storage—conceded, that is to say, in their guilty plea—amounts to the enormous quantity of 30 kilos of cocaine.

The statutory offense, 21 U.S.C. § 856, does not address questions of quantity at all. Questions of quantity are statutory elements in offenses dealing with possession with intent to distribute.

It is urged both by the defendants and by the Government that the factor of quantity is one not identified in the guidelines with respect to § 856, but that it is appropriate for me to consider. In that connection, the Government has submitted the document issued by the Sentencing Commission on May 5, 1988, captioned, "Questions Most Frequently Asked About the Sentencing Guidelines." Question 10 is as follows: "If the offender is indicted for possession with intent to distribute, but is only convicted of simple possession, does the amount of drugs affect the sentence?"

The answer is: "The guideline section utilized to compute the guideline range must be determined by the offense of con-

viction (§ 1B1.2(a)). The simple possession guideline (§ 2D2.1) does not utilize the amount of drugs to determine the appropriate offense level. Of course, the amount of drugs may be considered by the court for the purposes of determining the appropriate sentence within the guideline range or for possible departure."

By parity of reasoning, the Government urges it is appropriate to take quantity into account in the § 856 context. The magnitude of 30 kilos is suggested by the submission, which the court accepts for purposes of today's disposition because the record offers no reason to doubt it, that 30 kilos of cocaine has a street value in the range of 10 million dollars. I find persuasive the view that so enormous a quantity may be taken into account as a basis for a very substantial upward departure from the guideline.

It is urged upon me that a comparable ground for departure upward is authorized by § 5K2.9, "Criminal Purpose." "If the defendant committed the offense in order to facilitate or conceal the commission of another offense, the court may increase the sentence above the guideline range to reflect the actual seriousness of the defendant's conduct." I have no difficulty with accepting the principle that the Sentencing Commission had in mind in making that policy statement. However, I am not satisfied, for the reasons suggested in my description of the difficulties that the Government might face in making its proof, that the cases before me are ones in which I can comfortably conclude that the offense of conviction was an offense committed "in order to facilitate or conceal the commission of another offense." That this is a plausible view of the facts, I have no doubt. But I do not find the record so strongly supportive of that view as to warrant recognizing it as the basis for upward departure from the guidelines.

I do, however, find that there is further ground for upward revision authorized by § 5K2.14, under the caption "Public Welfare," where the Commission recites, "If national security, public health, or safety was significantly endangered, the court may increase the sentence above the guideline range to reflect the nature and circumstances of the ·offense." I regard that policy statement as one which is both appropriate and to be very carefully utilized. The terms national security, public health and safety are terms of enormous breadth, and in easy rhetoric vast ranges of antisocial conduct could be brought within each of those terms. Given, however, that we are dealing with principles of criminal law in which precision and the absence of vagueness are to be cultivated, I think we should be at great pains to make sure that so broad a category of potential upward revision of sentences is narrowly tailored to circumstances that indubitably fall within such criteria. It may well be that the Commission contemplated that the words "national security, public health, or safety" were to be read with the adjective "national" attached to all three nouns—"*national* security, *national* public health, or *national* safety*". Otherwise, there is the danger that such terms as public health and safety might roam very wide beyond the intendment of the Commission, and, indeed, of Congress, whose authority stands behind the Commission.

I am prepared to conclude, taking public health as meaning national public health, and safety as meaning national safety, that activities involving the storage of drugs, which in this event turned out to amount to 30 kilos of cocaine, did indeed carry with them a threat to the public health and safety of the nation. These are vast quantities of terribly dangerous controlled substances. So I conclude that upward departure is warranted under that formulation.

It will be noted that in this particular case there is an overlap between the national public health and national safety concerns and the quantitative concerns that I suggest were not addressed by the Commission; but that might not always be the case. One could, by way of example, suppose other forms of controlled substances of much less malign character, but whose storage is nonetheless unlawful. Thus, the storage of large quantities of marijuana might not be regarded as presenting any threat to the national public health or safe-

568

ty, and might yet be regarded as an aggravating circumstance not taken into consideration by the Commission under the § 856 guidelines, and properly considered by a judge as grounds for upward revision.

The substance of what I have said is that I am prepared to accept the plea agreements, which contemplate for Mr. Restrepo and Mr. Rave agreed sentences of 60 months under the § 856 count, and the dismissal of Counts 1 and 2. In announcing that I approve the agreement entered into by the Government and the defendants, I want to make it clear that I find that the plea agreements are authorized by the guidelines and their attendant commentary, to the extent that those guidelines give us guidance on (1) an agreed plea which contemplates the dismissal of certain counts, and (2) upward revision beyond the guidelines of the sentence to be imposed on the remaining count.

If I entertained significant doubts, which I do not, that I have the authority, and indeed that it is an appropriate exercise of discretion, to approve these plea agreements, I would then entertain concerns with respect to whether the guidelines and their attendant structure so narrowed the authority and attendant discretion of a sentencing judge as to raise issues of constitutionality. Under the circumstances before me, in which I find the plea agreement an appropriate one for me to approve, I am satisfied that no such issues are presented.