Karen **EASTWOOD**, an Individual, Plaintiff-Appellee,

v.

**DEPARTMENT OF CORRECTIONS OF the STATE OF OKLAHOMA; Larry Meachum, Director of the Department of Corrections, State of Oklahoma; Tom Lovelace, Individually and as an Employee of the Department of Corrections; Ted Wallman, Deputy Warden of the Oklahoma State Penitentiary, Department of Corrections, Defendants–Appellants,**

and

**Dempsey Johnson, Individually, and as an Employee of the Department of Corrections, Defendant.**

No. 87–2238.

United States Court of Appeals, Tenth Circuit.

May 12, 1988.

---

Michael D. Parks of Stipe, Gossett, Stipe, Harper, Estes, McCune and Parks, McAlester, Okl., for plaintiff-appellee.

Guy L. Hurst, Asst. Atty. Gen., (Robert H. Henry, Atty. Gen., and Michael W. Elliott, Asst. Atty. Gen., with him on the briefs), Oklahoma City, Okl., for defendants-appellants.

Before MOORE and BALDOCK, Circuit Judges, and O'CONNOR, District Judge.*

JOHN P. MOORE, Circuit Judge.

This is an appeal from the district court's denial of defendants' motion to dismiss plaintiff Eastwood's § 1983 claim on the grounds of qualified and absolute immunity. The Oklahoma Department of Corrections (DOC) argues the claim against it is barred by the Eleventh Amendment. Defendants Wallman, Lovelace, and Meachum, all of whom are DOC employees, assert they cannot be sued because they are entitled to the defense of qualified immunity. We agree that the DOC is protected from suit by the Eleventh Amendment. We also hold that this immunity extends to DOC officials who are being sued in their official capacity; therefore, plaintiff's suit against defendants Meachum and Wallman must be dismissed. However, the action brought against Mr. Lovelace in his individual capacity survives the qualified immunity defense because plaintiff has established that Mr. Lovelace knew or should have known about plaintiff's clearly established right of privacy. The district court's order is therefore affirmed in part and reversed in part.

---

* Honorable Earl E. O'Connor, United States Chief Judge for the District of Kansas, sitting by designation.

## I.

Plaintiff Eastwood, a former employee of the DOC, alleges that after a training session at a DOC facility on March 4, 1985, Dempsey Johnson, a fellow employee, enticed her to his room and put a drug in her drink which rendered her unconscious. Plaintiff awoke to find Mr. Johnson sexually assaulting and molesting her. When plaintiff reported this incident, the DOC sent defendant Lovelace, a departmental investigator, to probe the validity of her allegations. Plaintiff claims Mr. Lovelace promised her that she would not be harassed or fired if she revealed everything about the incident. Later that day, however, Mr. Lovelace allegedly threatened to fire her unless she signed a statement promising to forget the incident if Mr. Johnson resigned. Plaintiff also claims that Mr. Lovelace, at the behest of Mr. Meachum, the director of the DOC, forced her to reveal facts about her sexual history. Even though she acquiesced to these demands, defendants Lovelace, Meachum, and Wallman (who serves as the deputy warden of the DOC) allegedly created an offensive work environment by harassing her with additional questions about her sexual history, publishing offensive and insulting drawings within the DOC facility, and repeatedly making insulting remarks. Unable to stand this abuse, Ms. Eastwood resigned her position in April 1985.

## II.

### A.

A denial of a motion to dismiss ordinarily may not be appealed because it is not a final decision. *See* 28 U.S.C. § 1291. Under the "collateral order" doctrine of *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949), however, an interlocutory appeal may be taken from decisions that "finally determine claims of rights separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred...." The Supreme Court has held that a denial of a claim of absolute immunity falls within this small class of interlocutory orders. *Nixon v. Fitzgerald*, 457 U.S. 731, 743, 102 S.Ct. 2690, 2697, 73 L.Ed.2d 349 (1982). More recently, the Court also applied the collateral order doctrine to the denial of qualified immunity. *Mitchell v. Forsyth*, 472 U.S. 511, 528, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985). The Court reasoned that qualified immunity is an immunity from the burdens of litigation, including being subjected to broad-reaching discovery, which could only be preserved by allowing an immediate appeal from a district court's denial of immunity. *Id.* The Court concluded that a court's denial of a motion for dismissal or summary judgment on the ground of qualified immunity was an appealable interlocutory decision, despite the absence of a final judgment. *See also Barrett v. United States*, 798 F.2d 565, 571 (2d Cir.1986) (denial of a motion to dismiss based on claim of immunity is immediately appealable).

Following this precedent, we hold that this court has jurisdiction to consider the district court's denial of defendants' claims of absolute and qualified immunity. Although limited to questions of law, our review necessarily "entail[s] consideration of the factual allegations that make up the plaintiff's claim for relief." *Mitchell*, 472 U.S. at 528, 105 S.Ct. at 2817. Furthermore, our review is *de novo*, requiring us to review the evidence in the light most favorable to the nonmoving party. *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

### B.

We must next address whether plaintiff has set forth her allegations with sufficient detail. In § 1983 actions that raise the issue of qualified immunity, plaintiff must plead facts with sufficient particularity to establish the foundation for recovery. *Brown v. Texas A & M Univ.*, 804 F.2d 327, 333 (5th Cir.1986). We believe Ms. Eastwood has met this standard. In her complaint, she alleges that Mr. Lovelace, at the behest of Mr. Meachum, in-

quired into her sexual history and coerced her to sign a waiver on March 6, 1985. The complaint continues:

> Since the date of the incident [the sexual encounter], March 4, 1985, there has been an ongoing and continuous series of acts which constitute sexual harassment against the Plaintiff, committed and condoned by the Defendants, consisting of questioning which violates the privacy rights of Plaintiff; the publication of offensive and insulting drawings of Plaintiff within the Department of Corrections' facilities; and the making of insulting and offensive remarks concerning the Plaintiff, at Department of Corrections [sic] facilities. All of these actions have created an offensive work environment, and conditions of work for Plaintiff.

Certainly, it would have been preferable if Ms. Eastwood had set forth each of these incidents in greater detail. But plaintiff has not merely couched her complaint in broad or vague allegations. Rather, she has explained and dated the initial meeting with Mr. Lovelace and listed three different actions allegedly committed by the defendants which could constitute sexual harassment. These allegations, viewed in the light most favorable to Ms. Eastwood, are sufficiently detailed to form the basis of a claim warranting further litigation.

### III.

With these preliminary issues decided, we turn to the merits of defendants' claims of immunity. To determine the applicability of a qualified immunity defense, an appellate court must examine if the official conduct at issue "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Defendants contend that Ms. Eastwood has failed to show how their actions violated a clearly established constitutional right. The state may legitimately inquire into the sexual conduct of its citizens, defendants argue, to determine if a claim of sexual harassment is well-founded.

■ Definitions of what constitutes a clearly established right have been hazy. However, the Supreme Court recently held that recovery under § 1983 will only be allowed if the official's unlawfulness is apparent in light of the preexisting law. *Anderson v. Creighton*, —— U.S. ——, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); *Devargas v. Mason and Hanger–Silas Mason Co.*, 844 F.2d 714 (10th Cir.1988). The particular action in question, however, need not have previously been held unlawful. *Anderson*, 107 S.Ct. at 3039. Nor must there even be a strict factual correspondence between the cases establishing the law and the case at hand. *E.g., Garcia by Garcia v. Miera*, 817 F.2d 650, 657 (10th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1220, 99 L.Ed.2d 421 (1988). Rather, this circuit requires only "some but not precise factual correspondence." *Id.* (quoting *People of Three Mile Island v. Nuclear Regulatory Comm'rs*, 747 F.2d 139, 144 (3d Cir.1984)). It is incumbent upon government officials "to relate established law to analogous factual settings." *Id.*

■ While the Constitution does not explicitly establish a right of privacy, the Supreme Court has recognized for nearly 100 years that a right of personal privacy does exist. *E.g., Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Union Pacific R.R. Co. v. Botsford*, 141 U.S. 250, 11 S.Ct. 1000, 35 L.Ed. 734 (1891). In a series of cases, the Court established a zone of privacy protected by the penumbra of a variety of provisions in the Bill of Rights.[1] This penumbra protects two kinds of privacy interests: the individual's interest in avoiding disclosure of personal matters and the interest in being indepen-

---

1. As the Court noted in *Roe*, the "roots" of the right of privacy have been found in the First Amendment, *Stanley v. George*, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); in the Fourth and Fifth Amendments, *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); in the general penumbra of the Bill of Rights, *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); and in the Fourteenth Amendment's concept of personal liberty and restriction upon state action, *Roe v. Wade*, 410 U.S. at 153, 93 S.Ct. at 727.

dent when making certain kinds of personal decisions. *Whalen v. Roe*, 429 U.S. 589, 599, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977). The first interest protects the individual from governmental inquiry into matters in which it does not have a legitimate and proper interest. *Id.* "The right to be left alone," the Supreme Court has said, is "the right most valued by civilized men." *Olmstead v. United States*, 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (Brandeis, J., dissenting). Following this venerable precedent, this circuit has invoked the right of personal privacy against intrusion by the state on a number of occasions. In *Cumbey v. Meachum*, 684 F.2d 712 (10th Cir. 1982), for example, we held that an inmate's constitutionally protected right of privacy might have been violated by female guards watching him undress. *See also Mangels v. Pena*, 789 F.2d 836 (10th Cir. 1986) (Due Process Clause protects the individual's interest in avoiding disclosure of personal matters).

This constitutionally protected right is implicated when an individual is forced to disclose information regarding personal sexual matters. In *Thorne v. City of El Segundo*, 726 F.2d 459 (9th Cir.1983), *cert. denied*, 469 U.S. 979, 105 S.Ct. 380, 83 L.Ed.2d 315 (1984), for example, plaintiff was asked about her sexual past by a polygraph examiner during an examination to become an officer on the city police force. The examiner asked plaintiff several questions about her recent miscarriage, including the identity of the father. After plaintiff revealed the father was a married officer on the city force, the examiner asked her if she had other relationships with department personnel. The court decried this questioning, holding that "the interests ... [plaintiff] raises in the privacy of her sexual activities are within the zone protected by the constitution." *Id.* at 468. The police force might establish carefully tailored questions regarding an applicant's sexual past to protect against the adverse effects of sexual relations among officers, the court concluded, but it could not justify an "unbounded, standardless inquiry" into the plaintiff's personal life. *Id.* at 470. *See also United States v. Westinghouse Elec. Corp.*, 638 F.2d 570 (3d Cir.1980) (information regarding one's body and health is a matter which the individual is ordinarily entitled to keep private).

■ As in *Thorne*, plaintiff in the instant case was forced to answer a number of irrelevant and embarrassing questions. To justify this invasion of plaintiff's privacy, the defendants argue that these questions were designed to test the validity of her complaint.[2] A court certainly could find instead that the defendants sought to harass plaintiff into dismissing her complaint and quitting her job. The alleged subsequent behavior of defendants, including the publication of offensive drawings within the DOC facility, suggests such a motive. Furthermore, even if we were to believe that defendants sought this information to determine the validity of plaintiff's complaint, there exists little correlation between plaintiff's sexual history and whether she fabricated the story of being sexually molested. Indications of a victim's promiscuity are not probative of either credibility or consent to sexual advances. *E.g., Doe v. United States*, 666 F.2d 43, 48 (4th Cir.1981). Nor should such an inquiry be sanctioned in this case. We therefore uphold the district court's finding that Mr. Lovelace should not be protected by qualified immunity.

### IV.

With commendable candor, plaintiff's counsel conceded at oral argument that his suit against the DOC is barred by the Eleventh Amendment, which prohibits suits in federal court against a state by its own citizens or by citizens of another state. *E.g., Edelman v. Jordan*, 415 U.S. 651, 662, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974). Our review of the law is in accordance with this concession. *See, e.g., Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) (suit against Alabama Department of Corrections is barred by the Eleventh Amendment). We con-

---

**2.** Unstated in defendants' justification, but obviously present, is the implication that plaintiff's complaint is unworthy if she is less than sexual-

ly innocent. This antiquated notion overlooks the fact that *everyone* has the right to refuse a sexual advance.

clude that the DOC is an arm of the state and should be entitled to absolute immunity.

This immunity under the Eleventh Amendment remains in effect when state officials are sued for damages in their official capacity. *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Garcia v. Board of Educ. of Socorro Consol. School Dist.,* 777 F.2d 1403 (10th Cir.1985), *cert. denied,* — U.S. —, 107 S.Ct. 66, 93 L.Ed.2d 24 (1986). As the Supreme Court has noted, suing officials in their official capacity "represent[s] only another way of pleading an action against the entity of which an officer is an agent." *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2036 n. 55, 56 L.Ed.2d 611 (1978). In particular, a judgment against a public servant in his official capacity imposes liability on the entity that he represents. *E.g., Brandon v. Holt,* 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985). We therefore reverse the district court's finding that the defendants are not entitled to absolute immunity. Since plaintiff has chosen to sue defendants Meachum and Wallman only in their official capacity, all claims against them must be dismissed, and plaintiff may only maintain her suit against Mr. Lovelace in his individual capacity.

AFFIRMED IN PART AND REVERSED IN PART.