UNITED STATES of America,
Plaintiff–Appellee,

v.

Frank Javier TAMEZ, Defendant–Appellant.

No. 89–30320.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 7, 1991.

Decided July 30, 1991.

Howard N. Schwartz, Dauber, Bartheld & Schwartz, Yakima, Wash., for defendant-appellant.

Donald E. Kresse, Asst. U.S. Atty., Yakima, Wash., for plaintiff-appellee.

Before WIGGINS, BRUNETTI and NELSON, Circuit Judges.

BRUNETTI, Circuit Judge:

Frank Javier Tamez appeals his conviction and sentence under 21 U.S.C. § 856(a)(2), for making available a building for the purpose of narcotics trafficking. We have jurisdiction under 28 U.S.C. § 1291 and affirm in part and reverse and remand in part.

## I. Background

In October 1987 the DEA began an investigation of defendant Tamez after receiving information that his used car dealership, consisting of five lots in and around Yakima, Washington, was being used to distribute cocaine. On October 22 an undercover officer purchased an ounce of cocaine from Sigifredo Escamilla, a Tamez employee, at one of the lots. Sigifredo told the officer that Tamez was his source of cocaine and that through Tamez he could supply whatever drugs were required.

Gerald Dauenhauer, a government witness, testified that he purchased more than three kilograms of cocaine from Sigifredo at the dealership over several months in 1987. He testified that Sigifredo referred to the drug distribution scheme as "Frank's operation" and claimed to be selling fifty kilograms per month from the dealership.

There was testimony that Robert Wilhelm, a government witness, purchased cocaine at the dealership. On one occasion Sigifredo drove a dealership-owned car to his repair shop and cocaine that was concealed within the vehicle was removed at the shop for distribution. Sigifredo told Wilhelm that Tamez was using proceeds from the drug distribution effort to purchase cars for the dealership.

David Reed was employed by Tamez to repossess cars. He testified that on three occasions Tamez instructed him to travel in a company car to a rest area in northern California, to leave the vehicle with the keys under the seat, and to return to Yakima in a designated car parked at a rest area across the freeway. The return vehicle was driven back to the dealership though Reed testified he never saw these vehicles on the lot for sale. For each trip, Reed was paid $1200 though he received only between $50 and $125 for a repossession. He also testified that he was aware of other such car swaps that did not appear to be related to car sales or repossessions.

Elizabeth Evans, a government informant and agent in this investigation, made a total of five cocaine purchases from Tamez employees during the period of the operation. Some actual drug transfers took place at the lot and a kilogram purchase occurred, apparently for security reasons, at the residence of a Tamez employee. Evans also testified that Tamez explained to her that he had financed his car business with the proceeds of narcotics sales.

Terry Evans, also a government agent, went to work for Tamez as a mechanic. He described several conversations between himself and Tamez in which Tamez acknowledged that his employees were engaged in cocaine trafficking and did not express any objection to these activities.

Teresa Ball, also a government witness, testified that she attempted to purchase drugs on the premises of the used car lot

and that on one occasion she smoked cocaine with Tamez, in his office, together with Vince Williams, a Tamez employee.

In November 1988 agents searched Tamez' residence and found $50,000 and a gun. In April 1989 a Washington grand jury indicted Tamez for conspiracy to distribute cocaine, 21 U.S.C. § 846, and making available for use a building for the purpose of narcotics trafficking, 21 U.S.C. § 856(a)(2). A jury found Tamez not guilty of the conspiracy charge, but found him guilty of the § 856(a)(2) violation. He was sentenced to 37 months imprisonment, five years supervised release, and a $50,000 fine.

## II. Discussion

### A. *Applicability of 21 U.S.C. § 856(a)(2)*

■ Tamez argues that the jury verdict is unsound because § 856(a)(2) was not intended to be applied in this kind of case. Interpretation of a statute is a question of law this court reviews de novo. *United States v. Arrellano*, 812 F.2d 1209, 1211 (9th Cir.1987), *amended*, 835 F.2d 235 (1987).

Section 856(a)(2) states:

■ [I]t shall be unlawful to—
(2) manage or control any building, room, or enclosure, either as an owner, lessee, agent, employee, or mortgagee, and knowingly and intentionally rent, lease, or make available for use, with or without compensation, the building, room, or enclosure for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance.

Tamez argues that application of this statute to the facts of this case was improper because the statute was intended only to apply to "crack houses" or manufacturing operations. He argues the statute requires the building be intended by the defendant to be used for the purpose of manufacturing or other prohibited activities. The buildings in this case, he asserts had no purpose other than use in the operation of a successful used car dealership.

As Tamez suggests, most cases applying § 856 involve large scale drug storage facilities, manufacturing operations, or crack houses. *See United States v. Wicker*, 848 F.2d 1059 (10th Cir.1988) (methamphetamine lab); *United States v. Martinez–Zyas*, 857 F.2d 122 (3rd Cir.1988) (cocaine warehouse and packaging facility); *United States v. Bethancurt*, 692 F.Supp. 1427 (D.C.D.C.1988) (crack house); *United States v. Restrepo*, 698 F.Supp. 563 (E.D.Pa.1988) (cocaine warehouse). Because there was no evidence of storage, manufacturing or the kind of use associated with a crack house here, Tamez argues the statute is inapplicable.

Tamez also relies on the "short title" of § 856 which is "Establishment of manufacturing operations." He argues that the statute was not intended to subject to liability every person who owns a building where drug activities are conducted. The statute, in his view, should not be applied in this case because there was no evidence of manufacturing operations. Finally, Tamez cites a synopsis of § 856 in the Congressional Record which describes the statute as "Outlaw[ing] operation of houses or buildings, so called 'crack houses' where 'crack,' cocaine and other drugs are manufactured and used." H.R. 5484, 99th Cong., 2nd Sess., 132 Cong.Rec. S13779 (daily ed. September 26, 1986). Because there was no evidence that Tamez' dealership was used as a crack house, he argues, it was error to apply the statute in this case.

Tamez ignores the plain language and application of the statute. Although the short title and the Congressional Record synopsis refer to manufacturing and crack houses, the words of the statute clearly imply more expansive coverage. First, the words of the statute are not ambiguous: the statute prohibits allowing the use of a building for "manufacturing, storing, distributing, or using a controlled substance." There is no reason to believe that this language was intended to apply only to storage facilities and crack houses. There was evidence that the dealership was used as a distribution center and this is sufficient, under the plain language of the stat-

ute, to constitute a section 856(a)(2) violation.

■ Tamez' assertion that the statute requires that he *intend* to use the building for a prohibited purpose under section 856(a)(2) also ignores the plain meaning and interrelation of the two § 856 provisions. Section 856(a)(1) states: "[I]t shall be unlawful to—(1) knowingly open or maintain any place for the purpose of manufacturing, distributing, or using any controlled substance...." This provision applies to purposeful activity and as such, if illegal purpose is, as Tamez suggests, a requirement of 856(a)(2), the section would overlap entirely with 856(a)(1) and have no separate meaning.

The fifth circuit addressed this issue in *United States v. Chen,* 913 F.2d 183 (5th Cir.1990). In that case, Chen was convicted of violating both 856(a)(1) and (2). The trial court charged the jury that with regard to *both* § 856 provisions, the defendant is guilty of *knowing* violations if she *deliberately ignored* unlawful conduct that should have been obvious. The fifth circuit reversed with regard to the section 856(a)(1) conviction, deciding that § 856(a)(1) requires purpose or intention to manufacture, distribute, or use a controlled substance whereas

> § 856(a)(2) is designed to apply to the person who may not have actually opened or maintained the place for the purpose of drug activity, but who has knowingly allowed others to engage in those activities by making the place "available for use ... for the purpose of unlawfully" engaging in such activity. Therefore, under § 856(a)(2) the person who manages or controls the building and then rents to others, need not have the express purpose in doing so that drug related activity is engaged in by others (i.e., others have the purpose).

*Id.* at 190.

We reject Tamez' argument on the logic of *Chen.* Both provisions of § 856 must have meaning, and from the language of the provision it is clear that (a)(1) was intended to apply to deliberate maintenance of a place for a proscribed purpose, whereas (a)(2) was intended to prohibit an owner from providing a place for illegal conduct, and yet to escape liability on the basis either of lack of illegal purpose, or of deliberate ignorance. The government established that a significant degree of distribution activities emanated from Tamez' dealership. Although there was no evidence that the business or its buildings were established or maintained for the purpose of drug activities, section 856(a)(2) requires only that proscribed activity was present, that Tamez knew of the activity and allowed that activity to continue. We hold that § 856(a)(2) was properly applied in this case.

## B. *Co-conspirator Statements*

Tamez next complains that the trial court erred in admitting testimony by government witnesses regarding out of court statements by alleged co-conspirators. For example, Officer Valenzuela testified regarding incriminating statements by Sigifredo Escamilla at the dealership in October 1987. Appellant argues that such statements were hearsay and were not covered under F.R.E. 801(d)(2)(E) which states: "A statement is not hearsay if ... the statement is offered against a party and is ... a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy."

Tamez argues that he was not a part of any conspiracy, indeed the jury acquitted him of conspiracy, and thus the trial court's decision to admit the statements under 801(d)(2)(E) was error. He also argues that the district court failed to make a finding with regard to the admissibility of the 801(d)(2)(E) statements.

■ Under *Bourjaily v. United States,* 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987), "[a]n accused's knowledge of and participation in an alleged conspiracy are preliminary facts that must be established before extra-judicial statements of a co-conspirator can be introduced into evidence." *United States v. Silverman,* 861 F.2d 571, 576 (9th Cir.1988) (citing *Bourjaily* ). Although co-conspirator hearsay statements may be used to prove the pre-

liminary facts of the conspiracy and defendant's involvement in it, the government cannot rely solely on those statements: there must be evidence, beyond the statements, to demonstrate by a preponderance of the evidence the conspiracy and defendant's connection to it. *United States v. Gordon,* 844 F.2d 1397, 1402 (9th Cir.1988).

The standard we use to review a district court's decision to admit 801(d)(2)(E) statements pursuant to *Bourjaily* is not settled. *Compare United States v. Gordon,* 844 F.2d 1397, 1402 (9th Cir.1988) with *United States v. Torres,* 908 F.2d 1417, 1424 (9th Cir.1990). Although the *Bourjaily* court refers to "clear error," as we have recognized, the "appropriate standard of review ... was not an explicit holding in *Bourjaily.*" *Gordon,* 844 F.2d at 1402. We need not resolve the appropriate standard here. Under either the de novo or clear error standard, we believe the co-conspirator statements were properly admitted.

■ The district court apparently did not make an express finding that the government had established the existence of a conspiracy and Tamez' connection to such a scheme. In response to an initial defense objection to a proffered 801(d)(2)(E) statement the court responded "[T]hat will be overruled on the basis of Count I of the Indictment and the interpretation of the law in *Bourjaily.*"

■ *Bourjaily* specifies the quantum of proof (preponderance of the evidence) necessary to establish preliminary facts (i.e., a conspiracy and defendant's part in the agreement) necessary to admit 801(d)(2)(E) statements. The case does not specify that a court must hold a separate evidentiary hearing. In this case the trial court made a sufficient finding that the preliminary facts had been established by a preponderance of the evidence when it overruled Tamez' objection in light of the court's "interpretation of *Bourjaily.*"

There is no support for Tamez' apparent argument that such a decision was clearly erroneous. While the jury eventually decided that the government failed to demonstrate beyond a reasonable doubt Tamez' part in the conspiracy, there was evidence to support the opposite view. Non-co-conspirator testimony established: Tamez' ownership of the dealership; a number of drug transactions that either took place at the business or were initiated there; Tamez paid a large sum of money to David Reed to move several vehicles that were not apparently part of the car dealership business; Tamez smoked cocaine in the office of the dealership with an employee; and police recovered a large amount of cash and one weapon from Tamez' house. These facts, coupled with statements made by co-conspirators (e.g., the statement by Sigifredo Escamilla that Tamez was the source of the cocaine distributed at the dealership) provided the district court with sufficient evidence, under *Bourjaily,* to admit the 801(d)(2)(E) statements.

Tamez argues finally that the court allowed the jury to make the admissibility decision rather than making the *Bourjaily* determination itself. Tamez does not support this argument with any evidence and, in light of the above discussion, it is clear that the trial court engaged in a sufficient *Bourjaily* determination and did not allow the jury to decide the admissibility issue.

### C. *Testimony of Elizabeth Evans*

■ Tamez next argues Elizabeth Evans' testimony, which was important to the prosecution's case,[1] should have been excluded because Evans admittedly had perjured herself at a trial involving two co-conspirators. Tamez objected to Evans' testimony at trial and the objection was overruled. We review a district court's evidentiary determinations for abuse of discretion. *United States v. Lee,* 846 F.2d 531, 534 (9th Cir.1988).

■ Tamez argues that Evans' testimony, as a result of her admitted perjury, was so inherently unreliable that a conviction based in part on her testimony must be

---

**1.** Evans was employed by the government to make cocaine purchases and arrangements for drug buys at the dealership.

reversed. For this view Tamez cites cases in which evidence discovered *after* trial revealed that a witness for the prosecution had committed perjury either in the instant prosecution, or in a closely related case. *See Mesarosh v. United States,* 352 U.S. 1, 77 S.Ct. 1, 1 L.Ed.2d 1 (1956); *United States v. Krasny,* 607 F.2d 840 (9th Cir. 1979), *cert. denied,* 445 U.S. 942, 100 S.Ct. 1337, 63 L.Ed.2d 775 (1980); *Williams v. United States,* 500 F.2d 105 (9th Cir.1974). These cases are inapposite here.

The trial court did not abuse its discretion in allowing Evans to testify because the parties were aware that she had committed perjury in the former case. Tamez was permitted to, and did cross examine Evans extensively regarding her veracity. Evans testified that she lied about her authorship of certain reports in the former trial in order to hide the fact that she is illiterate. Tamez provides no support for the view that Evans is a habitual liar who is incapable of testifying truthfully. The trial court decided that it was for the jury to weigh the importance of Evans' former perjury and the court did not abuse its discretion in doing so.

### D. *Testimony by Co-conspirator's Lawyer*

■ Tamez tried to introduce the testimony of an attorney for Leo Escamilla, one of the alleged co-conspirators. Escamilla was convicted in an earlier trial and testified in Tamez' trial that although he was offered leniency in sentencing for testifying against Tamez, he refused to do so because, in his view, Tamez was not involved in the drug sales. The testimony of Escamilla's attorney was offered for the sole purpose of supporting Escamilla's assertion that he had been offered a deal and had refused on the basis of his belief in Tamez' innocence.

The trial court refused to allow the attorney to testify. It stated:

> The purpose of it [the lawyer's testimony] is obvious in the way of shoring up the testimony of Mr. Escamilla. But this Court has had occasion before and sim-

ilar offers to indicate that if we get into this—if we start summoning the ranks of the CJA bar or the defense bar generally, Counsel, to divulge what occurred and what considerations were of mind in connection with their plea bargaining, the chilling effect on negotiations with the Government would have impact as far as policy considerations, which would effectively impact the entire process.

The decision to exclude testimony is given wide discretion and is reversible only if the court abused its discretion, *United States v. Dupuy,* 760 F.2d 1492, 1499 (9th Cir. 1985), and we hold there was no such abuse here. Escamilla testified regarding the offer made to him by the government and his refusal to accept the offer due to his belief in Tamez' innocence. The trial court considered the attorney's testimony, and the testimony of Escamilla, and decided that in light of policy favoring plea negotiations and settlement, the testimony should not be admitted. There is no evidence that the court abused its discretion in arriving at this decision.

### E. *Sentencing*

Tamez was sentenced under the Sentencing Guidelines. The base level for violation of 21 U.S.C. § 856 is 16. U.S.S.G. § 2D1.8. The trial court adopted the recommendation of the amended presentence report that the base level be increased by 2 points under section 3B1.1(c) because defendant was an "organizer, leader, manager, or supervisor in any criminal activity." Employing a base level of 18 and a criminal history category of 3, Tamez was sentenced to 37 months, at the middle of the applicable range.

■ Tamez argues that the district court erred in refusing to grant a downward adjustment under Guideline § 3B1.2 because Tamez was a minimal participant in the illegal activities at issue here. Whether a defendant is a minor or minimal participant in a criminal activity is an issue of fact reviewed for clear error. *United States v. Gillock,* 886 F.2d 220, 222 (9th Cir.1989) (per curiam).

█ Tamez argues that because the conspiracy charge against him was dismissed, the jury implicitly found that his role in the expanse of illegal activities was minimal, and thus that a § 3B1.2 adjustment is appropriate. This court has rejected the argument that a defendant may receive a minimal participant reduction for playing a minor role in uncharged or unconvicted counts. *United States v. Zweber*, 913 F.2d 705, 708 (9th Cir.1990). Thus, the minimal participant analysis regards *only the count of conviction.* Tamez cannot seriously contend that he was a minimal participant in the count under § 856(a)(2), which contemplates violation by an individual. We hold that the district court's denial of the § 3B1.2 reduction was not clear error.

█ Tamez finally argues that the trial court improperly applied the 3B1.1(c) "organizer" adjustment to him. The district court's decision regarding the defendant's role in the offense is reviewed for clear error. *United States v. Carvajal*, 905 F.2d 1292, 1295 (9th Cir.1990).

In adopting the two point increase for organizer status under § 3B1.1(c) the district court said:

> [Tamez] stands convicted of maintaining a property on which drugs were trafficked; and it seems to this Court inherent in that situation there is a finding that it was his property. Almost by definition it was his property, his business; he was in charge of it. He certainly was responsible for what occurred on it; and implicit in that is, of course, a finding that his was a leadership role, as far as the operation of the property was concerned. He did have the authority to fire and hire. He had the authority to expel people from his property; and it seems to the Court that that necessarily would require the addition ... of two points under 3B1.1(c).

In applying § 3B1.1(c), we have required more than the district court relied on here for a 3B1.1(c) enhancement. *See United States v. Reed*, 914 F.2d 1288 (9th Cir.1990) (enhancement appropriate where defendant admitted to playing an organizing role in a drug distribution operation); *United States v. Mares–Molina*, 913 F.2d 770 (9th Cir. 1990) (enhancement inappropriate where defendant owned a warehouse where drugs were being stored, but where there was no evidence that he "exercised control or was responsible for organizing, supervising, or managing others in the commission of the offense." *Id.* at 773); *United States v. Carvajal*, 905 F.2d 1292 (9th Cir.1990) (enhancement justified where defendant initiated drug transaction with DEA agent and exercised overall control over the deal); *United States v. Avila*, 905 F.2d 295 (9th Cir.1990) (enhancement was proper where defendant coordinated the procurement and distribution of drugs).

█ In this case, the district court assumed that because Tamez owned the property, and knowingly permitted drug distribution to take place at the dealership, he was necessarily a leader subject to section 3B1.1(c) enhancement. In fact, Tamez was found not guilty of any part in an ongoing conspiracy. Moreover, the provision under which Tamez was convicted, § 856(a)(2) implies that although Tamez knew or should have known illegal activities took place on the premises, he was not a significant player in those activities, let alone an organizer or leader. We hold 3B1.1(c) enhancement was not proper in this case and remand to the district court for resentencing.

THE JUDGMENT IS AFFIRMED IN RELEVANT PART AND REVERSED AND REMANDED FOR RESENTENCING IN ACCORDANCE WITH THIS OPINION.