977 F.2d 588
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
GO-VIDEO, INC., an Arizona corporation, Plaintiff-Appellant,
v.
The MOTION PICTURE ASSOCIATION OF AMERICA, Defendant,
and
Matsushita Electrical Industrial Co., Ltd.; Victor Company
of Japan, Ltd.; Sony Corporation, Defendants-Appellees.
 No. 91-16039.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 20, 1992.
Decided Oct. 9, 1992.
 
 Before WIGGINS, O'SCANNLAIN and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Go-Video appeals from the district court's judgment against it in this Sherman Act Section 1 antitrust case. We affirm.
 
 
 3
 * Go-Video holds a United States patent for a dual-deck video cassette recorder (VCR). To market its VCR, Go-Video had to negotiate a deal with the manufacturing defendants (appellees here) or their licensees because they control basic VCR patents. Although Go-Video commenced efforts to introduce its VCR during 1984, it did not obtain a supplier until June 1987. Go-Video brought suit against multiple parties, alleging that the delay in its marketing efforts was due to a conspiracy, in violation of Section 1 of the Sherman Act, to prevent the introduction of dual-deck VCRs into the United States and to refuse to deal with anyone attempting to do so.
 
 
 4
 Appellees and other electronics manufacturers belong to various trade associations. Such trade associations include the Electronic Industries Association of Japan (the "EIAJ"), which is a trade association of Japanese electronics industry members, the Electronic Industries Association ("EIA"), which is an American counterpart to the EIAJ, and the Japan Video Association ("JVA"), which is a trade organization of Japanese video industry members.
 
 
 5
 The Motion Picture Association of America ("MPAA"), composed of United States film industry members, is another trade association involved in this case (an original defendant but not an appellee). Prior to the time that Go-Video sought to produce its dual-deck VCR, members of the MPAA unsuccessfully sued Sony in Universal City Studios, Inc. v. Sony Corp., 659 F.2d 963 (9th Cir.1981), rev'd, 464 U.S. 417 (1984) (the "Betamax" case), over production of a basic VCR that could copy television programs. The Supreme Court held that such activity did not violate copyright laws. While the Betamax case was pending, the MPAA tried to obtain legislation placing a royalty on VCR hardware and software.
 
 
 6
 Dual-deck VCRs have the ability to copy from one cassette to another. This fact prompted the MPAA to oppose such VCRs, again due to copyright concerns, whenever a company appeared about to introduce a version into the market.
 
 
 7
 According to Go-Video, the MPAA invited and caused the alleged conspiracy to be formed through critical media campaigns and through use of co-conspirators and intermediaries such as the EIA and the JVA. Furthermore, according to Go-Video, the threat of litigation or royalty legislation by the MPAA caused the appellees to use EIAJ and other meetings to conspire against Go-Video and to further the worldwide conspiracy alleged among all original defendants.
 
 
 8
 Trial commenced April 2, 1991 before a jury in Phoenix, Arizona. The case was submitted to the jury on May 30, 1991. A special verdict form posed ten questions, the first of which was whether appellees had conspired to withhold dual-decks from the United States. If that question was answered in the negative, the jury was not to address the remaining questions. The jury answered the question in the negative, so judgment was entered for appellees on May 31, 1991, by the district court. This timely appeal followed. We have jurisdiction under 28 U.S.C. § 1291.
 
 II
 
 9
 Go-Video asserts that the district court erred in numerous ways. Go-Video alleges four faulty evidentiary rulings, three faulty jury instructions, and one faulty pretrial imposition of time limits, all of which Go-Video claims are grounds for reversal.
 
 III
 
 10
 As a general rule, we review evidentiary rulings for an abuse of discretion and will not reverse absent some prejudice. Roberts v. College of the Desert, 870 F.2d 1411, 1418 (9th Cir.1988). Prejudice justifying reversal means that, more probably than not, the error tainted the verdict. Kisor v. Johns-Manville Corp., 783 F.2d 1337, 1340 (9th Cir.1986). The correct standard is unclear, however, regarding admission of statements of alleged co-conspirators.
 
 
 11
 * Certain newspaper articles asserted the existence of the alleged conspiracy. The district court excluded the articles as inadmissible hearsay and as unfairly prejudicial under Rule 403 of the Federal Rules of Evidence.
 
 
 12
 Go-Video argues that the articles were the means by which the conspirators implemented and kept themselves informed of the conspiracy, so the articles should have been admissible to prove that fact, as well as knowledge and intent. Go-Video argues that exclusion of the evidence was prejudicial: Due to the news articles, the existence of the conspiracy was well known to all involved, but the jury found no conspiracy because it was kept ignorant.
 
 
 13
 Appellees counter that the articles would be highly prejudicial to them if admitted because they "reported" the existence of the alleged conspiracy, i.e., the very issue the jury was being asked to decide.
 
 
 14
 The district court expressly found that the articles were hearsay, with no relevant exception. Therefore, the district court implicitly found, as appellees claim, that the articles were being offered for the truth of their content. The district court also found that Rule 403 prevented admission of the evidence in any event. Even if the district court erred in finding hearsay, such error would be harmless if this court defers to the district court's Rule 403 ruling.
 
 
 15
 This court gives great deference to a trial court's Rule 403 balancing. Rogers v. Raymark Industries, Inc., 922 F.2d 1426, 1430 (9th Cir.1991). The Ninth Circuit recognizes that trial courts are in a much better position to sense the dynamics of a trial and to examine surrounding facts and circumstances than are courts of appeals. See, e.g., R.B. Matthews v. Transamerica Transp. Servs., 945 F.2d 269 (9th Cir.1991). In sum, a party faces a heavy burden in overcoming evidentiary rulings that involve Rule 403 balancing. Given the damning nature of the newspaper evidence, we cannot conclude that the district court erred.
 
 
 16
 The district court did not abuse its discretion by excluding the articles from evidence.
 
 B
 
 17
 MPAA members made various statements in 1985 and 1986 to the effect that the Japanese VCR industry agreed not to introduce dual-deck VCRs into either the United States or Japan.
 
 
 18
 Go-Video asserts that the district court erred by ruling that the MPAA could not, as a matter of law, be a co-conspirator, and then ruling that the MPAA's statements were, therefore, inadmissible hearsay. Go-Video cites liberal rules relating to evidence upon which a proponent may rely to prove participation in a conspiracy. Go-Video then cites liberal rules rendering statements of co-conspirators admissible. Finally, Go-Video recounts facts that, it claims, overwhelmingly link the MPAA to the alleged conspiracy. Go-Video concludes that the MPAA statements should have been admitted under Rule 801(d)(2)(E).
 
 
 19
 Appellees contend that the MPAA statements were properly excluded on hearsay grounds.
 
 
 20
 To get the MPAA statements admitted under Rule 801(d)(2)(E), Go-Video was required to prove to the district court, by a preponderance of evidence, the existence of the conspiracy and the MPAA's involvement in it. Bourjaily v. United States, 483 U.S. 171, 175-76 (1987); United States v. Tamez, 941 F.2d 770, 775 (9th Cir.1991). Go-Video asserts that the evidence it presented was "overwhelming" in this regard. Appellees assert, and the district court found, to the contrary, that Go-Video did not meet its burden.[1]
 
 
 21
 We are persuaded that the district court's interpretation of the evidence (that the MPAA articles were permissible lobbying and warning activities) is at least as reasonable as Go-Video's interpretation (the articles show that the MPAA invited and caused the conspiracy through a media campaign intended to communicate with Japanese VCR makers). We conclude that the district court did not clearly err in concluding that Go-Video failed to prove both the existence of the conspiracy and the MPAA's involvement in it.
 
 
 22
 The district court certainly did not abuse its discretion by excluding the MPAA statements.
 
 C
 
 23
 The district court placed certain time period and subject matter limitations on evidence it would allow Go-Video to introduce at trial relating to meetings of various trade associations. Go-Video sought to introduce evidence of numerous meetings which occurred outside the limited period, and claims that the limitations impermissibly confined and compartmentalized its proof relating to alleged conspiracies involving products other than dual-deck VCRs.
 
 
 24
 Appellees cite several cases for the proposition that evidence of conspiracies other than a dual-deck conspiracy, even if proven, can have little relevance or probative value. However, they misleadingly quote or paraphrase the cases on which they rely. For example, in Matsushita Electrical Industrial Co. v. Zenith Radio, 475 U.S. 574, 595 (1986), the Court emphasized that it was talking about conspiracies of a different nature (e.g., "a combination to increase profits in one market does not tend to show a combination to sustain losses in another") when it concluded that evidence supporting those collateral conspiracies "said little" about an alleged predatory pricing conspiracy.
 
 
 25
 Obviously, an electronics manufacturer or industry group that produces single-deck VCRs, dual-deck audio equipment, camcorders, and televisions, as well as producing or potentially producing dual-deck VCRs might have general policies with regard to marketing all their products. Marketing performance and policies relating to past, similar products would, therefore, arguably be relevant and probative if, as Go-Video claims, it wants such evidence to show that the dual-deck conspiracy was part and in furtherance of a broader, pre-existing conspiracy to monopolize and restrain trade in consumer products generally and on a worldwide basis.
 
 
 26
 Nevertheless, we cannot conclude that the district court erred. After considering the relevance and potential prejudice of the evidence, the district court issued an order allowing Go-Video to introduce only evidence relating to meetings that occurred within two years of the time during which Go-Video contended the dual-deck VCR conspiracy was formed and "cemented," i.e., February-March 1985. However, the order allowed Go-Video to introduce evidence of meetings occurring outside that timeframe if Go-Video could identify aspects of the meeting that would make it relevant to specific issues in the case.
 
 
 27
 The order, therefore, did not limit Go-Video's evidence to the 1983-87 period, as Go-Video claims. The order allowed Go-Video to introduce evidence of meetings occurring outside the specified timeframe if Go-Video could identify relevant aspects of the meetings. What makes the ruling potentially limiting is that, even during the 1983-87 timeframe, the order would "in general allow plaintiff to introduce only evidence of the fact, regularity and frequency of any of these meetings." We note, however, that the meetings to which the ruling refers apparently did not include meetings at which dual-deck VCRs were discussed. Go-Video concurs with this interpretation: "Substantively, except for simply the fact and frequency of meetings, Go-Video could present evidence only with respect to meetings at which dual-deck VCRs were discussed." Appellant's brief at 36-37.
 
 
 28
 We conclude that the order was not so limiting as to constitute an abuse of the district court's discretion.
 
 D
 
 29
 Go-Video claims that the district court erred by excluding a settlement agreement with former defendant Samsung.
 
 
 30
 Appellees introduced evidence that Samsung was producing a dual-deck VCR for Go-Video. Go-Video tried to introduce evidence that Samsung was producing the VCR as part of a settlement agreement. The district court rejected the evidence on Rule 408 grounds.
 
 
 31
 According to Go-Video, appellees emphasized to the jury that the Samsung-made dual-deck VCR was unsuccessful. Go-Video claims it was entitled to counter this by showing that problems with the Samsung-made product could be attributed to the fact that Samsung was forced to make it. Go-Video claims that, more importantly, the evidence necessarily conveyed a misimpression to the jury that there was no conspiracy (since Samsung was making a dual-deck VCR). Go-Video concludes that it was entitled to introduce the settlement evidence in order to counter this misimpression.
 
 
 32
 Rule 408 provides that settlement evidence is not admissible "to prove liability for or invalidity of the claim or its amount." However, the rule "does not require exclusion when the evidence is offered for another purpose...." Brocklesby v. United States, 767 F.2d 1288, 1292 (9th Cir.1985), cert. denied, 474 U.S. 1101 (1986).
 
 
 33
 The district court recognized that the existence of the Samsung-made VCR might negatively influence the jury. In its pre-trial order concerning the settlement evidence, the court wrote:
 
 
 34
 The court considers the Samsung agreement relevant to issues concerning the existence of a conspiracy. Jurors would be less likely to believe a conspiracy existed if they believed Go-Video entered into a contract with Samsung without Samsung's having been subject to litigation. Relevance to proving the existence of a conspiracy, however, is not a permissible reason under Rule 408 for admitting evidence of a settlement agreement.
 
 
 35
 (emphasis added).
 
 
 36
 The above indicates that the district court might have advanced, but did not recognize, a sufficient reason under Rule 408.
 
 
 37
 Even assuming this is true, however, we cannot find for Go-Video on this issue. As noted above, we review evidentiary rulings for an abuse of discretion and will not reverse absent some prejudice. Prejudice justifying reversal means that, more probably than not, the error tainted the verdict. Go-Video presented considerable conspiracy evidence relating to the 1983-87 period and the jury knew that Go-Video did not get a supplier until 1987. The fact that Go-Video got a supplier in 1987 would not negate conclusions drawn from that evidence.
 
 
 38
 Therefore, we conclude that, even if the court had abused its discretion, Go-Video would not be prejudiced to the point justifying reversal. Because this conclusion is dispositive, we do not reach Go-Video's alternative argument that appellees "opened the door" to the evidence.
 
 IV
 
 39
 Jury instructions are considered as a whole. We review challenges to the formulation adopted by the trial judge for an abuse of discretion. United States v. Beltran-Rios, 878 F.2d 1208, 1214 (9th Cir.1989).
 
 
 40
 * According to Go-Video, the alleged conspiracy was largely implemented through the activities of trade associations and, therefore, the district court's jury instructions relating to trade associations were crucial. Go-Video claims that the district court erred in its instructions to the jury regarding activities of such associations.
 
 
 41
 Go-Video claims that the district court erred by giving, over its objection, the following jury instruction:
 
 
 42
 As I mentioned, there are many examples of the ways in which competitors can lawfully cooperate through trade associations. Programs which seek to standardize or certify products to enhance safety or promote uniformity for the benefit of consumers are reasonable. Cooperation that seeks to promote research and development of new products, joint marketing, and bargaining activity by trade associations is allowed. The exchange of statistical information relating to prices obtained in actual transactions, cost of the product, stocks on hand and transportation costs is lawful. The distribution to trade association members of communications received from persons outside the association, without more, is also lawful.
 
 
 43
 Go-Video contends that, by this language, the court instructed the jury that all such activities of trade organizations were "per se lawful." Go-Video claims that "[i]t would be impossible for any antitrust plaintiff to prove a conspiracy effectuated through trade organizations under the instructions given." Go-Video relies on Allied Tube & Conduit Corp. v. Indian Head, 486 U.S. 492, 500-04 (1988), for the proposition that, far from being per se lawful, such activities are highly suspect, and so the instructions misstate the law.
 
 
 44
 Appellees counter that the above-quoted "instruction" is but a passage from a comprehensive and lengthy set of instructions which, taken as a whole, correctly instructed the jury. Appellees do not specifically address Allied Tube & Conduit Corp. That opinion, however, even though expressing some misgivings relating to the anticompetitive potential of trade associations, is consistent with the jury instructions.
 
 
 45
 All activities in the offending passage can be legal and are subject to rule of reason antitrust analysis if challenged. See, 1 Von Kalinowski, Antitrust Laws and Trade Regulation § 2.06 (1992). Under the rule of reason, the test of legality is whether, considering the circumstances, an alleged restraint is one that promotes competition or one that suppresses competition. Continental T.V., Inc. v. G.T.E. Sylvania Inc., 694 F.2d 1132 (9th Cir.1982).
 
 
 46
 The above-quoted instruction, by itself, could mislead the jury because it indicates that all such activities of trade organizations are generally legal. That is not the law. Depending on the circumstances, such activities might not survive rule of reason analysis.
 
 
 47
 However, appellees are correct that Go-Video quotes the offending instruction out of context. The quoted passage is but a part of one paragraph from several pages of instructions relating to trade associations and conspiracies in restraint of trade. The passage is bracketed at both ends by qualifying or cautionary statements. Immediately before and after the offending passage the district court instructed the jury:
 
 
 48
 Trade associations by their nature involve concerted activities, but their activity is not unlawful unless it involves an unlawful conspiracy ...
 
 
 49
 Activities of trade associations, like those discussed above, do not by themselves establish restraint of trade.
 
 
 50
 Subsequent passages from the instructions further mitigate any misleading effect. The court elaborates on specific trade association activities, including general cooperation, exchanges of information, standardization of products, and the establishment and monitoring of trade standards. The jury was instructed that such activities could either foster competition or could restrain competition in violation of the Sherman Act. The jury was told that "[i]t is for you to decide the purpose of any such meetings."
 
 
 51
 The instructions relating to activities of trade associations, taken properly as a whole, do not constitute an abuse of the district court's discretion.
 
 B
 
 52
 Go-Video claims that the district court erred by giving, over its objection, the following jury instruction relating to circumstantial evidence:
 
 
 53
 A conspiracy may be proved by direct or circumstantial evidence that reasonably tends to prove that the defendants "had a conscious commitment to a common scheme designed to achieve an unlawful objective." The antitrust laws, however, impose certain requirements with regard to the reliability and quality of the evidence by which such a conspiracy can be established.... The plaintiff has relied on circumstantial evidence to prove the existence of a conspiracy among defendants, and you must be careful what inferences to draw from that evidence.
 
 
 54
 Go-Video correctly argues that conspiracies often must, and may, be proved by circumstantial evidence. River City Markets, Inc. v. Flemming Food West, Inc., 960 F.2d 1458 (9th Cir.1992).
 
 
 55
 However, as appellees point out, Go-Video again objects to mere passages of jury instructions. The jury specifically was instructed that Go-Video could rely entirely on circumstantial evidence to prove the alleged conspiracy. True, the jury was also told to be "careful" when drawing inferences from circumstantial evidence. However, that admonition was well qualified. For example, the following sentences (omitted by Go-Video) occur in the instructions within the above-quoted passage:
 
 
 56
 A conspiracy may be inferred from the circumstantial evidence only when such inferences are reached by logic and reason, and not based upon speculation or conjecture. Circumstantial evidence does not itself establish the existence of some fact or theory, but rather asks you to infer the existence of a fact from other facts or theories which may have been established in the case.
 
 
 57
 Similarly, the instructions elsewhere state:
 
 
 58
 It is for you to decide whether a fact has been proved by circumstantial evidence. In making that decision, you must consider all the evidence in the light of reason, common sense and experience.
 
 
 59
 Properly taken as a whole, the instructions clearly indicate to the jury, not that circumstantial evidence is inferior to direct evidence, but that, due to its nature, care is required to make proper inferences from circumstantial evidence. In short, the court's instruction was a correct and reasonable interpretation of the law and did not lead the jury to think that circumstantial evidence in a conspiracy case was suspect.
 
 
 60
 We conclude that the jury instructions relating to circumstantial evidence did not constitute an abuse of discretion.
 
 C
 
 61
 Go-Video claims that the district court erred by giving, over its objection, the following jury instruction relating to the testimony of Go-Video's chairman, Mr. Dunlap:
 
 
 62
 An attorney who testifies as a witness while representing a client does so at a very great detriment to the credibility of his testimony. Mr. R. Terren Dunlap, who testified for plaintiff Go-Video, is also representing Go-Video as its attorney of record in this case but only as its local counsel with little active role as an attorney. You may consider the fact that Mr. Dunlap is counsel of record for plaintiff in this case, together with the extent of his participation as a lawyer, as distinguished from his other capacities with Go-Video, in deciding what weight, if any, to give to his testimony.
 
 
 63
 Go-Video claims that Mr. Dunlap was local counsel of record in name only and that he played no active role as an attorney in this case. Go-Video argues that the general purpose of such an instruction is to deal with a situation where, at trial, an attorney addresses the trier of fact as both advocate and witness. Go-Video concludes that the instruction was, therefore, improper.
 
 
 64
 Appellees claim that Mr. Dunlap did, in fact, play a limited role: he attended pre-trial determinations, signed documents, and argued before the court in connection with one motion.
 
 
 65
 It is hard to conclude that the district court was in error or even remotely unfair in connection with this instruction. The best characterization seems to be that the court stated the generally applicable law correctly, put Mr. Dunlap's role relating to that law in clear perspective, and gave the jury proper guidance for its decision.
 
 
 66
 The district court did not abuse its discretion by use of this instruction.
 
 V
 
 67
 Go-Video claims that the district court erred in imposing time limits prior to trial and in enforcing those limits, restricting Go-Video's cross-examination and closing argument.
 
 
 68
 Prior to trial, the district court allowed each side eighty hours of total trial time. Go-Video claims that the district court set the eighty-hour limit without consulting the parties or considering the circumstances or exigencies of the case. Go-Video argues that such arbitrary limitations, set in advance of trial, are improper and, in particular, violate Go-Video's Seventh Amendment right to a jury trial.
 
 
 69
 According to appellees, the district court, contrary to what Go-Video says, set its eighty-hour per side allocation after consulting with the parties and based on their recommendations. Go-Video, according to appellees, was reminded of the limit during the trial, but chose to "squander" its time on an unnecessarily long presentation of its direct case.
 
 
 70
 The record shows that the district court allocated time to the parties after consultation and based on the parties' estimates of how long the trial would take. Indeed, the court apparently relied on Go-Video's estimate of total trial time needed for both parties. Furthermore, the court expressly stated it was up to each side how to allocate their hours for different phases of their case. The court subsequently warned Go-Video about its use of time. Late in the trial, when Go-Video's allotted trial was about to expire and Go-Video had its cross-examination and closing argument left to perform, the court allowed an additional fifteen minutes per witness for cross-examination and an additional two hours for closing arguments. The record further indicates that the court continued to be flexible, allowing Go-Video even more time.
 
 
 71
 Generally, district courts have broad discretion to control trials. A court may not, however, deny or unduly restrict cross-examination on a proper subject. Harries v. United States, 350 F.2d 231 (9th Cir.1965). Placing an arbitrary fifteen-minute time limit on cross-examinations, without consideration of subject matter, type of witness, and other factors, might well constitute an abuse of discretion. From all indications, however, the court made exceptions to its rule and granted extra time whenever it thought exceptions were appropriate.
 
 
 72
 Under the circumstances, the district court did not abuse its discretion by imposing its time limitations.
 
 VI
 
 73
 The evidentiary rulings, jury instructions, and pre-trial imposition of time limits, to which Go-Video objects in this appeal, survive review under the standards we must observe.
 
 
 74
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Go-Video claims that the standard of review for this issue is abuse of discretion. Appellees claim that this court can reverse only for "clear error." The correct standard is unclear. Defendants cite United States v. Torres, 908 F.2d 1417, 1424 (9th Cir.), cert. denied, 111 S.Ct. 366 (1990), for the "clear error" standard. This court, in fact, used the clear error standard in that case. Later, however, in Tamez, 941 F.2d at 775, this court did not follow Torres, but stated: "The standard we use to review a district court's decision to admit 801(d)(2)(E) statements pursuant to Bourjaily is not settled." This court did not resolve the appropriate standard in Tamez because it found the co-conspirator statements to be properly admitted under either the de novo or clear error standard. In this appeal as well, even if we review this issue de novo rather than for clear error or abuse of discretion, the result would be the same